JUNE TERM,
1853,

West
vs.
The State of
Wisconsin.

1 209
J 92 428

WILLIAM WEST, *Plaintiff in Error*,

*vs.*

THE STATE OF WISCONSIN, *Defendant in Error.*

ERROR TO CIRCUIT COURT OF FOND DU LAC COUNTY.

On trial of indictment for the seduction of an unmarried female, under Sec. 6, of Chap. 139, of the Revised Statutes, it is necessary to prove that the female alleged to have been seduced, was of previous chaste character.

The law does not presume, in the absence of testimony, the previous chaste character of the female; such presumption being incompatible with the legal presumption in favor of the innocence of the accused.

When the indictment is against a married man, proof of his marriage is essential to the constitution of the offence.

To sustain such indictment, it is essential to prove marriage in fact; cohabitation, acknowledgement, and reputation are not sufficient, or competent to prove marriage in fact.

It seems the confessions of the defendant, seriously and solemnly made, of the fact of his marriage, as an event, are admissible.

But mere acknowledgement of the relation of husband and wife, made idly, or to ward off prosecution, or to stifle inquiry, or to evade social criticism, are not admissible.

The English and American authorities cited and reviewed.

On such indictment the unmarried condition of the female is essential to be proved.

On the trial of a criminal case, the defendant is entitled to compulsory process to compel the attendance of witnesses in his behalf, without payment or tender of fees.

14

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.

Witnesses subpœnaed on behalf of the defendant, are required to attend without prepayment or tender of fees ; and such requisition upon the citizen, is not the taking of private property for public uses.

The issuing of an attachment for a witness for failing to comply with the command of the subpœna, is a matter within the sound discretion of the court, and the refusal of the attachment is no ground of error, unless there is a manifest abuse of such discretion, tending to the injury of the party applying for the attachment.

The plaintiff in error was indicted at the April term of the Circuit Court for the county of Fond du Lac, for the seduction of Eliza Pierce.

The first count charged, " that William West, late of the town of Springvale, in the county aforesaid, on the 4th day of March, in the year of our Lord, one thousand eight hundred and fifty-two, at Springvale, in the county aforesaid, the said William West, being then and there a married man, did seduce and have illicit connection with one Eliza Pierce, the said Eliza Pierce being then and there an unmarried female of previous chaste character, and other wrongs to the said Eliza Pierce, then and there did, against the form of the statute in such case made and provided, and against the peace and dignity of the State of Wisconsin." The second count is substantially like the first.

To this indictment the defendant pleaded, not guilty, and the cause was set down for trial, and was tried at the April term, 1853.

Before the trial commenced, the defendant, by his counsel, moved the court for an attachment against one Ashel Brooks, on whom a subpœna, as a witness in behalf of the defendant had been regularly served, and who had been in attendance as such witness, in obedience to said subpœna, during that term, but had left and gone home the day before the application was made. No fees had been paid or tendered

the witness, and it appeared that his testimony was material to the defence. This motion was denied by the court, on the ground that no fees had beed paid or tendered to the witness by the defendant. To which decision of the court the defendant excepted.

On the trial, the prosecutrix was called and examined as a witness, who testified to the commission of the offence by the defendant, with all the circumstances attending it, and the prosecution further offered to prove by the witness, the cohabitation of the defendant with his alleged wife, together with reputation of his marriage, and his recognition of the woman with whom he was living, as his wife ; to which the defendant, by his counsel, objected, but was overruled by the court, and exception was taken. The like evidence was admitted to be given by other witnesses, to which objection was made, and exception to the ruling of the court taken.

The evidence being closed, the court charged the jury, as follows :

" The law presumes that the prosecutrix, Eliza Pierce, was a chaste female previous to the commission of the offence alleged against the defendant.

" That proof of cohabitation by the defendant with a female, as husband and wife, is evidence of marriage in this case.

" That circumstances, such as the introduction of a female by the defendant, as 'Mrs. West,' calling her his wife, answering to the title of husband, and assuming, in their intercourse with society, the character of husband and wife, is evidence of marriage in this case.

" That the evidence that Eliza Pierce was only about fourteen years of age at the time of the occur-

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin. rence; that she lived with her parents; that by their direction, not by the direction of a husband, she went to live with the defendant; that defendant applied to her father to have her bound to his service for a period of time; that when she left the defendant's house, on a visit, she returned to her father's, and when she finally left the defendant's service, she returned to her father's, and not to her husband's; together with the fact, that during the trial, there was no intimation from any quarter, that she was married, were circumstances from which the jury might find that Eliza Pierce was an unmarried female."

To which charge of the court, the defendant, by his counsel, excepted.

The jury returned a verdict of guilty, whereupon a motion for a new trial was made, founded upon alleged errors in the charge aforesaid, which was overruled by the court.

The evidence is not here stated at length for the reason, that the questions of law raised in the case are rendered sufficiently clear and definite by the facts embraced in the charge of the court below, which was founded entirely upon the testimony given on the trial, as well as by the relation of the evidence given in the opinion of this court.

The cause now comes here by writ of error, and the following are the errors assigned by the counsel for the plaintiff in error:

*First.* The court erred in charging the jury, that the law presumes that the prosecutrix, Eliza Pierce, was a chaste female previous to the time of the commission of the offence alleged against the defendant.

*Second.* That the court erred in charging the jury that that proof of cohabitation on the part of the defendant, with a female, as husband and wife, was evidence of marriage in this case.

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.

*Third.* That the court erred in charging the jury that circumstances, such as the introduction of a female to persons as ' Mrs. West,' calling her his wife, answering to the title of husband, and assuming in their intercourse with society, the character of husband and wife, was evidence of marriage in this case

*Fourth.* That the court erred in charging the jury that the evidence that Eliza Pierce was only about fourteen years of age at the time of the occurrence ; that she then lived with her parents ; that by their direction, and not by the direction of a husband, she went to live with the defendant ; that the defendant applied to her parents to have her bound to his service for a period of time ; that when she left the defendant's house, on a visit, she returned to her father's, and when she finally left the defendant's service, she returned to her father's, and not to her husband's house; that when she complained of her wrongs, she complained to her mother, and not to her husband ; together with the fact, that during the trial there was no intimation that she was married, are circumstances from which a jury might find that she was an unmarried female.

*Fifth.* The indictment is insufficient to sustain a conviction, because—

1st. The marriage of the defendant is a substantive part of the crime, and should be averred expressly ; and it is not so averred, but only recited in the indictment in this cause.

2d. The fact that Eliza Pierce is an unmarried female, should have been averred, and not recited, for the same reason.

3d. The indictment is uncertain, informal and insufficient in law to support a conviction.

*Sixth.* The court erred in refusing the attachment for Ashel Brooks, on the ground that no fees had been paid or tendered him by the defendant.

*J. C. Truesdale,* for the plaintiff in error, contended that a defendant in a criminal prosecution, had a right to process, and to compel the attendance of witnesses in his behalf, without payment or tender of fees, and cited *Const. U. S. Dec. of Rights, Art.* 7; *R. S., p.* 724, § 8; *Story's Comment. on Const.,* § 1786; *R. S., p.* 516; 1 *Car. & P.,* 322; *Eng. Com. Law R.* 11, *p.* 409; 2 *Russ. on Cr.* 590; 1 *Stark. on Ev.* 119, 85. At the time of the framing of the Constitution of the United States, defendants in criminal prosecutions were entitled, by the law of England, to the same process as the Crown; and to secure and perpetuate this right, and others, the clause cited was incorporated in the Constitution.

No conviction could properly have been had in this case without proof of a marriage in fact of the defendant; cohabitation, reputation and confessions of the defendant, all combined, are not sufficient to warrant a conviction. 6 *Conn.* 446; 1 *Wheat's Sel.* 10; *Peake's Ev.* 330; *Swift's Ev.* 140; 1 *Swift's Dig.* 501; *Bull. Ni. Pr.* 274; *Burr.* 20, 57; *Doug.* 171; 7 *J. R.* 314; 15 *Mass.* 156; *Russ. on Cr.* 299. The marriage of the defendant being a substantive part of the offence, must be proved by the same character of evidence required in prosecutions for bigamy, incest and adultery. *R. S.* 708, § 6.

That there was no proof that the prosecutrix was of a chaste character.

That there was no proof that the prosecutrix was unmarried at the time of the commission of the alleged offence.

*Estabrook*, Att'y Gen'l, insisted that the issuing of

attachment for a witness was always a matter of discretion, and no ground of error.

Conceded, the rule of law as to marriage in fact, as contended for by the plaintiff in error, but was unable to perceive any satisfactory reason for the rule, and cited 2 *Stark. on Ev.* 251; *Dickinson vs. Coward*, 1 *B. & A.* 679 ; 2 *Greenl. on Ev.* (*adultery*); 7 *Greenleaf*, and 8 *Sergt. R.*

*By the Court,* SMITH, J. The errors assigned in this case we shall consider in their order.

1. " That the Circuit Court erred in charging the jury that the law presumes that the prosecutrix, Eliza Pierce, was a chaste female previous to the commission of the offence alleged against the defendant."

It is true, that ordinarily, the reasonable and just presumption is in favor of female chastity. So is, likewise, the presumption in favor of moral honesty. Happily, these presumptions are not only justified in all civilized nations, but nobly illustrated, as well by the institutions of social life, as by the laws enacted by government. Social intercourse is based upon the presumption of virtue, and society is obliged, so far to conform to this law of its existence, that even in its most corrupt state, it is compelled to put on, at least the form and semblance of virtue, though its spirit may have departed.

In every issue in which the integrity of an individual is attacked, the presumption of the law comes to his aid. Every person charged with crime, is presumed innocent, till he be proved guilty. Fraud is never to be presumed, but must always be proved. Every female charged with an offence, the essence of

which is unchastity, is presumed to be chaste, until the contrary appears.

But these excellent and humane presumptions of the law, so pregnant with the testimony which it bears, to the dignity and honor of human nature, are always to be used, in the administration of justice, as a weapon of defence, not of assault. 'They are the shield of the accused, not the sword of the prosecutor.'

The statute defining this offence, chapter 139, section 6, is in the following words :

"Any unmarried man, who, under promise of marriage, or any married man, who shall seduce, and have illicit connexion with any unmarried female of previous chaste character, shall be guilty of a misdemeanor ; and, upon conviction, shall be punished in a State prison not exceeding five years, or by imprisonment in the county jail not exceeding one year ; but no conviction shall be had under the provisions of this section on the testimony of the female seduced, unsupported by other evidence, &c."

The previous chaste character of the female is one of the most essential elements of the offence ; made so by the express words of the statute, in conformity with the suggestions of sound reason. A prostitute may be the subject of rape, but not of seduction. It is the chastity of the female which the statute is designed to protect. The pre-existence of that chastity is a *sine qua non* to the commission of the crime. *That* is the subject of legal guardianship, provided by this section. It is a substantive matter necessary to be averred and proved.

If the prosecutrix were to change places, and were she indicted for lascivious conduct, then, indeed, the legal presumption would come to her aid, and her

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.

chastity would be presumed. But when the State accuses one of its citizens, with the violation of the chastity of another of its citizens by seduction, the law presumes the accused to be innocent of the entire offence, until the contrary appears. The State cannot be permitted to presume the *immediate* pre-existence of that chastity, with the destruction of which the defendant is charged. One act of illicit intercourse affords no presumption that another has not preceded it.

It is not the *act* of illicit intercourse merely, which is contemplated by the 6th section; but it is the prostration, by means of seductive arts and appliances, of the virtue of the female, by which her chastity has been violated, and her moral, as well as her physical condition, changed and polluted. The *gravamen* of the State's complaint is, that a pure and chaste female, has been rendered impure and unchaste, by the seduction and illicit connexion of the defendant. The presumption of innocence which the law affords the defendant, must be as broad as the offence charged, and it would seem, that the scope and strength of that presumption, should not be lessened or impaired by counter presumptions.

The previous chaste character of the female is by no means difficult of proof. If her *character* were unchaste, it could easily be shown; if otherwise, the very fact that it had never been questioned, would, perhaps, establish it. In this case the prosecutrix testified, that she had never had connexion with any one but the defendant. Slight corroboration might have been sufficient. But the error consists in the instruction which the court gave the jury, to the effect, that the law presumed that she was previously of a chaste

June Term,
1853.

West
vs.
The State of
Wisconsin.
character, *independent of any proof whatever*. This is setting up a presumption on the part of the State, the prosecuting party, incompatible with the presumption which the law affords the defendant; and if the principle should prevail, the presumption of the virtue of one citizen, might work the condemnation of another, in whose favor the law affords equal, and when charged with crime, even stronger presumption.

2. "That the court erred, in charging the jury, that proof of cohabitation on the part of the defendant, with a female as husband and wife, was evidence of marriage in this case."

3. That the court erred in charging the jury, that circumstances, such as the introduction of a female to persons as "Mrs. West," calling her his wife, answering to the title of husband, and assuming, in their intercourse with society, the character of husband and wife, was evidence of marriage in this case."

We choose to consider these two errors, assigned, together, as they are essentially similar in their character.

In actions for *crim. con.* and adultery, the marriage is an essential ingredient in the cause of action; so in bigamy. The latter differs from the former two, in this, that the fact of marriage in the latter is peculiarly within the knowledge of the defendant. In the former, especially, it has been held, that *marriage in fact*, or *actual marriage* must be proved, in contradistinction to proof of cohabitation and reputation. The case which most of the others in which this question has been determined, have seemed to follow, is that of *Morris vs. Miller*, 4 *Burr*. 2057. The question reserved for the consideration of the court, in that case, was,

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.

"Whether to support an action for a criminal conversation, there must not be proof of actual marriage?"

A verdict was taken for the plaintiff, subject to the opinion of the court; and the objection to the verdict was, that it was found without sufficient evidence of the plaintiff's marriage. On the argument of the motion to set aside the verdict, the plaintiff's counsel insisted that the evidence produced was *admissible*, and the jury had believed it.

"We proved," said the counsel for the plaintiff, " articles between the man and his wife, made after the marriage, for settling the wife's estate with the privity of relations on both sides. We prove *cohabitation, name and reception* of her by everybody *as* his wife; though we did not indeed prove it by any register, or by witnesses who were present at the marriage." " The defendant, Miller, confessed to the landlord of the lodging, ' that she was Captain Morris' wife,' and that he had committed adultery with her."

The counsel for the defendant objected against the *admissibility* of the evidence, that it was not the best evidence, &c.

After deliberation, the opinion of the court was delivered by Lord Mansfield : " We are all clearly of the opinion, that in this kind of action, there must be evidence of marriage in fact. *Acknowledgement, cohabitation and reputation, are not sufficient to maintain the action.*"

" But, we do not, at present, define *what* may or may not, be *evidence* of a marriage in fact."

The case *Birt vs. Barlow,* 1 *Doug.* 170, was a mere question of identity of the parties named in the copy of the register of the parish ; and it was held such identity might be proved by others than the subscribing witnesses.

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.
In the case of *Rigg vs. Curgenven*, 2 *Wils.* 195, the court say, *arguendo*; "but if it were proved (in an action for *crim. con.*) that the defendant had seriously or solemnly recognized, that he knew the woman he had lain with was the wife of the plaintiff, we think it would be evidence, proper to be left to the jury, without proving the marriage." But the question did not arise in the case then before the court. It was merely a dictum of the court in reply to an argument of one of the counsel in the case, and can hardly be relied upon as authority.

In every case in England, to which our attention has been directed, or which we have been able to find, relating to the questions under consideration, cohabitation, acknowledgement and reputation, have been held insufficient to prove marriage.

Mr. Starkie, in his work on evidence, vol. 2, page 252, says: "When, however, the defendant has seriously and solemnly recognized the marriage, it seems, upon principle, that his acknowledgement is admissible in evidence of the fact;" and he cites the case of Morris vs. Miller, 2 *Burr.*; but an examination of that case, hardly warrants the conclusion of the author.

In some of the United States, the English rule has been very considerably relaxed, and in others it has been adhered to, in all its original strictness, and has even derived increased stringency from a partial view of the points decided in the cases supposed to establish the rule.

In the State of New York, in the case of *The People vs. Humphrey*, 7 *Johns. R.*, 314; the prisoner was indicted for bigamy. The marriage of the defendant with A. S., *on the first of August,* was

duly proved. It was also proved that a short time afterwards, a person calling herself Elizabeth Humphrey, and the wife of the prisoner, appeared before a magistrate and charged him with the crime of bigamy. On his examination before the magistrate, the prisoner voluntarily acknowledg'ed that Elizabeth, who was then present, was his wife, and that they had been married about four years before. Objection was made to the evidence, as not being sufficient evidence of marriage in fact, to prove the first marriage. The objection was overruled and the prisoner convicted. Judgment having been suspended, the defendant was brought up on a *habeas corpus*, and the question submitted to the court. The court said: " In *Morris vs. Miller*, 4 *Burr.*, Lord Mansfield held, that in prosecutions for bigamy, as well as actions for *crim. con.*, a marriage in fact must be proved, and the same rule was recognized in *Birt vs. Barlow*, *Doug.* 171. The mere confession of a party is not sufficient evidence. The prisoner must be discharged."

We have already seen what was, in substance, scope and extent, the decision in those cases. The effect of the decision, in these two cases cited, in the brief opinion of the court, in the above case, is certainly misapprehended. In the case of Birt vs. Barlow, Lord Mansfield only decided, that it was not necessary to call the subscribing witnesses to a marriage certificate to prove the identity of the parties named in the register, but that it might be proved by other evidence. In Morris vs. Miller, the court only say, that: " In this kind of action (*crim. con.*,) there must be evidence of marriage in fact. Acknowledgement, cohabitation and reputation, are not sufficient." And in the same breath, the court say : " But we do not, at

June Term,
1853.

West
vs.
The State of
Wisconsin.
present, define what may or may not be evidence of a marriage in fact."

In Massachusetts, in the case of *The Commonwealth vs. Littlejohn and Barbarick*, *15 Mass.* 163, it was held, that cohabitation, acknowledgement and reputation were not sufficient proof of marriage, to sustain an indictment for lascivious cohabitation.

So in Connecticut ; *State vs. Roswell*, 6 *Conn. Rep.* 444 ; on an information for the crime of incest, alleged to have been committed by the defendant, with his legitimate daughter, Anna Roswell ; proof was admitted of the prisoner's confessions, at various times, that Anna R. was his daughter ; that her mother, Sarah Roswell, was his lawful wife, accompanied with evidence, that they had lived and cohabited together, uninterruptedly, for more than thirty years, &c. A majority of the court held that such proof was inadmissible, and held to the rule requiring strict proof of marriage in fact.

In all these decisions, the English cases before cited, are relied upon as authority, and are held by the court to establish an inflexible rule of evidence, to which they were bound to adhere.

On the other hand, it seems to us, from a careful review of the English cases, and after an earnest effort to comprehend the purport and extent of the English authorities, that the utmost length to which they have gone, is, that the mere idle declarations of the defendant, or his assertions made, palpably, or probably for another purpose, than to charge upon himself all the consequences of the admission ; or, those declarations or givings out, which one living in a state of concubinage would naturally make, for the mere purpose of screening himself from prosecution or social censure,

together with cohabitation and reputation, are not

sufficient to charge the defendant, where marriage is essential to the constitution of the crime.

For, it is certain, in the primary and leading case on this point, Lord Mansfield says, " We do not at present define what may, or what may not, be evidence of a marriage in fact." What is decided by this adjudication is, that there must be proof of marriage in fact. But in no single case does any one pretend to define the nature or kind of evidence competent or adequate to such proof.

In Pennsylvania, the question of the nature and kind of evidence competent to be offered, in order to prove marriage in an action for *crim. con.*, has been ably, if not elaborately considered, in the case of *Forney vs. Hallacher*, 8 *Sergt. & R.* 159. The evidence rejected in that case by the court below, was founded upon the declarations of the party defendant, that he knew Susannah Forney was married to the plaintiff, and that with full knowledge of that fact, he seduced her affections and debauched her; that he lived with her in a state of adultery and begat her child, which child was born alive. The Supreme Court overruled the court below, and held the evidence admissible.

So, in *Commonwealth vs. Mentaugh*, 1 *Ashmead*, 272, where it was held, that the confession of the defendant, in a prosecution for bigamy, is adequte evidence of marriage.

In Maine, *Cayford's case*, 7 *Greenleaf's Rep.* 57, on an indictment for lewd and lascivious cohabitation, the proof was, " that the prisoner removed from New Hampshire into Maine about twenty years since. Soon after, he sent a person after his "*wife and family*,"

who brought to him a woman and two children, whom he received and treated as his wife and children, calling the woman his wife. They continued to live together as man and wife upwards of ten years, during which time he went to England, where, he said, they were married, to obtain the property inherited by his wife, which, on his return, he said he had obtained, to a large amount." This evidence was objected to by the defendant's counsel, and admitted. A conviction followed, and the point was reserved.

The Supreme Court held the evidence admissible, and sufficient. It should be remarked, that in this case the court took a distinction between foreign and domestic marriages; and, in the case in 8 *Sergt. and Rawle*, a distinction was taken between the population, circumstances, and condition of this country and of England.

It is also to be remarked, that, from the authorities cited, it by no means appears, that the doctrine, that solemn, deliberate confessions of the defendant are to be excluded from the consideration of the jury.

It is also proper to be observed here, that, from all that has been observed, on a review of the leading cases and of those which have followed them, some of which may have enlarged, and others circumscribed the scope of their authority, no clear, definite rule has been established, by which the nature or kind of evidence competent to prove a marriage in fact, when that is essential to be proved, has been established. From such definition the court, with Lord Mansfield at its head, shrank in *Morris vs. Miller*. It becomes our duty to meet the exigencies of this case according to the best lights which are before us, and in full view of the responsibility upon us.

It will be conceded, it is presumed, that in criminal cases, where marriage is alleged in an indictment, and a marriage is essential to constitute the crime charged upon the defendant, a marriage in fact must be proved by competent, adequate evidence.

It will also be conceded, that in the case at bar, marriage is essential to be averred, in order to constitute the crime, when it is not committed by an unmarried man under promise of marriage.

The question then is, simply, what is competent evidence to prove marriage in fact where marriage is essential to the constitution of the offence?

It is evident that a distinction is to be made between the proof necessary to sustain an action for *crim. con.*, and an indictment for bigamy, lascivious cohabitation, or seduction. In the former, the plaintiff seeks to recover damages for the loss of comfort derived from the society of his wife, &c. The fact of the plaintiff's marriage is peculiarly within his own knowledge. If the woman seduced be not in fact his wife, though he may have cohabited with her almost a life-time as such, in contemplation of law, he has sustained no injury or loss, and has no claim to damages. Hence the necessity that the plaintiff shall establish, by irrefragible, unquestionable proof, the social relation, by the abruption of which he declares himself injured, and for which he seeks compensation. Not so in the prosecution by the government for bigamy. Not so in a prosecution for lascivious cohabitation, or in an indictment for seduction. In these latter cases, it is the marriage of the defendant himself, which is essential to the constitution of the offence. This fact is peculiarly within his own knowledge. Why then should not his solemn, deliberate declarations, or confessions

15

of the fact, be received in evidence? Proof of cohabitation alone is not sufficient, or competent, because this is but too frequent without marriage. Declarations of the defendant, made idly, or with a view to shield himself from prosecution, or public censure, while living in a state of concubinage—such as introducing the woman with whom he cohabits as his wife, acknowledgements of the *relation* of husband and wife, and the like, are not receivable in evidence, nor the common reputation of that relation which naturally springs from cohabitation. So, also, declarations made to parry social criticism, or to avoid legal inquisition, are of little or no weight. But, marriage in fact, is the point to be established by proof. A confession, therefore, of the fact of marriage; not of the relation of husband and wife, by assuming its characteristics; a distinct, unequivocal confession, seriously and solemnly made, of the fact of the marriage rite having been performed; such as a distinct reference to the ceremony or occasion of the marriage, as an event, it would seem, ought to be admitted, and if by the jury believed to have been made truly and sincerely, and not to evade the consequences of an illegal cohabitation, should be held sufficient.

This view seems to be sustained by the comments of the accredited authors upon the law of evidence, as well as by several adjudications in prosecutions for bigamy, in which the facts of the defendant's marriage was the gist of the offence.

In the case of *Birt vs. Barlow*, before cited, Lord Mansfield, in speaking of the case of *Morris vs. Miller*, observes, "but an action for criminal conversation has a mixture of penal prosecution, for which reason, and because it may be turned to bad purposes, by

JUNE TERM, 1853.

West vs. The State of Wisconsin.

persons giving the name and character of wife to women to whom they are not married, it struck me in the case of *Morris vs. Miller*, that in such an action a marriage in fact must be proved."

In *Trueman's case*, *East. P. C.* 465–469, quoted in 2 *Starkie on Ev.*, 654, indictment for bigamy, the cohabitation of the prisoner with Mary Russell was proved, and it was also proved that he had admitted that he had married her in Scotland; and it was proved that he showed a paper, which he said was a certificate of his marriage, and which was shown to be a writing which purported to be a proceeding before a court in Scotland against the prisoner and Mary Russell, for having married in a clandestine manner, upon which they appeared, acknowledged their marriage, and were fined 100 marks. The second marriage having been proved, the prisoner was convicted and his conviction held to be right. Here was a distinct admission, not of the relation of husband and wife merely, but of the actual fact of marrying the particular woman. Distinct reference is made to the time, the occasion, the place where, and the incidents connected with the fact of marriage. In a note to *Starkie's Ev.*, 655, it is said, " I have known a prisoner to be convicted of bigamy upon proof of his deliberate admission of both marriages in the presence of his first wife before a magistrate." All these cases and authorities, so far from excluding evidence of the solemn, deliberate confessions of the act of marriage, clearly sustain the doctrine of their competency.

But the court, in the case at bar, charged the jury " that proof of cohabitation by the defendant, as husband and wife, is evidence of a marriage in this case." This certainly, according to all the authori-

ties, is wrong. It contemplates proof of cohabitation, as husband and wife, and that only. It asserts the doctrine that cohabitation, as husband and wife, is competent evidence to sustain a prosecution in a criminal case, where marriage is essential to constitute the crime. The authority derived from all the cases, is clearly against this proposition. The same rule applies to proof of all those circumstances incidental to cohabition, such as the social recognition of the woman as his wife, calling her by his name, &c., because all these may be assumed merely to prevent criticism, or stifle inquiry.

We hold, in view of all the authorities, and in consideration of the reasons upon which the rule of evidence in cases of this kind should be based, that the fact of marriage of the defendant should be proved; that this fact may be proved by an examined copy of the register of marriage solemnized, where registry of marriages is, by law, required to be kept, together with proof of identity of the parties, by some person present at the solemnization of the marriage, or by the distinct, solemn, unequivocal confession or admission, by defendant, of the fact of marriage. By the latter, we mean an admission which has reference to, and clearly recognizes the act or ceremony of marriage, or circumstances or incidents, clearly pointing to the solemization of the event of marriage, in contradistinction to those pretences, acknowledgements or givings out, which may be put on or assumed for the mere purpose of evading censure or criticism.

4. The statute defining the offence of seduction, requires, that the female alleged to have been seduced, should be unmarried. This condition of the female

is as much an essential element, in the crime, as is the marriage of the defendant. It is true it is a negative, but it is one of the few negatives requisite to be proved, and for which only slight proof is necessary. In this case, the prosecutrix was living, at the time of, and a witness on the trial. The proof was neither difficult to be obtained, nor of doubtful character. It was so easily to be adduced, that its omission is remarkable. The unmarried condition of the female ought to have been established, and as all of the circumstances enumerated by the learned judge who gave the instruction excepted to, are reconcilable with the hypothesis of her marriage, one established rule of circumstantial evidence seems to have been overlooked, viz : that the circumstances by which a fact is sought to be established, must be incompatible with any other hypothesis.

But, it is objected by the counsel for the defendant, that the facts show, that if any crime at all was committed, it was the crime of rape, and not of seduction. To this it may be answered, that the facts proved were fairly submitted to the jury, and we learn, from the remarks of the counsel for the defendant, during the argument at bar, that this point was pressed upon the jury, at the trial, and by them passed upon. It is not for this court to say, or to conjecture, what may have been their finding upon the evidence, as jurors. Nor are we disposed to criticise the verdict of the jury, even if they failed to exercise the nicest logical acumen, upon evidence, which, if true, indicates the successful efforts of the defendant, in lighting the torch of senile lust to lay waste the future of female innocence and youth. Nor does it, in fact, appear, from an examination of the evi-

dence, that the jury, so far, yielded to temptation to swerve from their allegiance to those fixed rules, which long experience and venerable authority have established for our safe guide in the administration of the criminal law, as to require the corrective interposition of this court. Nor should the defendant complain that he has been found guilty of a misdemeanor only, upon evidence, which, as he alleges, proves upon him the most atrocious felony.

Again, it is alleged for error, that before the trial commenced, the defendant, by his counsel, moved the court for an attachment against one Ashel Brooks, who, it appeared, had been duly subpœnaed to attend as a witness on behalf of the defendant, and who had been in attendance, but had left and gone home the day before the trial; which said motion was overruled by the court, on the ground that no fees had been paid or tendered to the witness.

It is not perceived by us, how this can well be alleged for error in this case. No motion for a continuance appears to have been made on account of the absence of the witness. But the counsel for the defendant, as well as the attorney general, have entered into the discussion of this question, and request our opinion upon it. It is alleged that it has been determined both ways in the different circuits, and that it is desirable to have the law settled. Under these circumstances we have entertained, and will give our opinion upon the point.

It was, anciently, the commonly received practice, in the common law courts, that no counsel should be allowed the defendant upon his trial upon the general issue, in any capital crime, unless some point of law arose, proper to be debated. Several reasons are

given for this rule ; perhaps the best, if not the most facetious, that could be devised, is that given by Sir Edward Coke, which is, " because the evidence to convict the prisoner should be so manifest as it could not be contradicted." So, also, the doctrine was held, that as counsel was not allowed to any prisoner accused of a capital crime, so neither should he be allowed to exculpate himself by the testimony of any witnesses. This practice seems first to have been broken in upon by Mary I, upon the appointment of Sir Richard Morgan, Chief Justice of the Common Pleas. At length the enormous injustice of the rule became so oppressive to the consciences of the courts that the practice of examining witnesses for the prisoner, without oath, gradually grew up. But the iniquity of this practice was as obvious as that of the old rule. The witnesses for the crown testified under oath, and however solemnly or truly, or reasonably they might testify, the evidence produced by the prisoner, wanted the sanction of an oath, and lost its just weight in the estimation of the jury. At different times afterwards the rule was so modified by acts of parliament, as to admit the examination of witnesses on oath, in behalf of the defendant, in particular cases, until at length, it was declared by statute (1 *Ann. St.* 2 *c.* 9,) " that in all cases of treason and felony, all witnesses for the prisoner should be examined upon oath, in like manner as the witnesses against him."

A recurrence to the history of the law upon this subject, affords us essential aid in deducing the equitable principle of the law which effected its reformation. The same principle which would require that the witnesses for the prisoner should be examined on

June Term,
1853.

West
vs.
The State of
Wisconsin.

oath, in like manner as the witness against him, also requires, for its full satisfaction, like process to obtain their attendence on the trial. It would be, in many cases, but bitter mockery to grant a prisoner the right to have witnesses examined in his behalf, and then to deny him the necessary process of law to procure their attendance. And in conformity with the full equity of the rule, the Constitution of the United States, and of this State, declares "that in all criminal prosecutions, the accused shall enjoy the right to be heard by himself and counsel for assistance in his defence, and to have compulsory process to compel the attendance of witnesses in his behalf."

The justice and humanity of this rule must be apparent to every one. The State, when it becomes the party in a criminal prosecution, occupies a very different position from a party plaintiff in a civil action. It is as much interested in vindicating the innocence of one wrongfully accused, as in convicting one who is really guilty. The sole object of the prosecution is, to ascertain the truth, and to maintain the law. Its process should be as ready, therefore in behalf of the accused, as against him, for the sole purpose of such process is, to procure the attendance of witnesses, by whom the truth is to be established.

The right to compulsory process, secured by the provisions of the Constitution, above referred to, cannot be taken away by legislative enactment, and ought not to be hampered by judicial construction. The legislature, so far from attempting to restrict this right, have expressly recognized it, and provided ample means for its full enjoyment. Section 8, of chapter 146, of the Revised Statutes, page 724, is in

the following words : "It shall not be necessary to

pay or tender any fees to any witness who is subpœnaed in any criminal prosecution, but every such witness shall be bound to attend, and be punishable for non-attendance, in the same manner as if the fees allowed by law had been paid him." By no rule of construction, can this section be restricted to witnesses subpœnaed on behalf of the State. It is evidently enacted in aid of the constitutional guaranty above mentioned, and includes, as well the witnesses for the defendant, as those for the State.

But, it is urged, that this section of the statute, if held to refer to witnesses summoned on behalf of the defendant, is repugnant to that provision of the Constitution, which provides that "the property of no person shall be taken for public use, without just compensation therefor." The time and labor of attendance of the witness are said to be as much property, within the meaning of the Constitution, as are chattels or land. But if this be so, then, it is difficult to perceive why the 8th section of chapter 146, above quoted, is not equally repugnant to the Constitution, whether the witnesses named therein are to be considered as witnesses for the State exclusively, or, as for either or both parties, for the demand upon them is imperative without offer of compensation. Nor is it any answer, to say, that the State is liable to pay its witnesses, for a precisely similar liability of the defendant may be replied.

But, in no just sense, can the requisition upon the citizen of his attendance upon the courts to testify as a witness, be considered as the taking of private property for public use, within the meaning of the Constitution. The object of that provision in the funda-

June Term,
1853.

West
vs.
The State of
Wisconsin.

mental law, was to protect the citizen from the grasping demands of government, not to absolve him from any of those various personal duties which every good citizen owes to his country ; such as the performance of militia duty, obedience to the call of the proper authority for his personal service in suppressing a riot, the apprehension of a felon, affording assistance to officers in making arrests when resisted, and the like. There are very many instances in which the citizen is required to perform personal service, or render aid to his government, without other compensation than that of his participation in the general good, and his enjoyment of the general security and advantage which results from common acquiesence in such obligations on the part of all the citizens alike, and which is essential to the existence and safety of society.

This doctrine, so clearly in harmony with the spirit of our Constitution and laws, seems to follow naturally from the recognition of the right of the prisoner to have witnesses sworn and examined on his behalf, as we have before attempted to show. And accordingly, in England, after the establishment of that right, by act of parliament, it seems to have been held, that a witness subpœnaed by the defendant in a criminal case, was bound to appear and testify, although no fees had been paid or tendered him. 1 *Starkie's Ev.* 85 ; 2 *Hawk. P. C.* c. 46, § 172 ; *Rex vs. Ring*, 8 *T. R.* 585; 2 *Russ. on Cr.* 948; 1 *Carr & Payne*, 409.

We hold, therefore, that a witness is bound to obey the process of subpœna in a criminal prosecution, as well on the part of the defendant, as on that of the State, without payment or tender of fees.

But it does not follow, that the refusal, by the

JUNE TERM, 1853.

West vs. The State of Wisconsin.

court, to grant an attachment against the witness for non-attendance, is error. The award of the attachment rests in the sound discretion of the court, to whom application was made, and whose process is disobeyed. It is somewhat like a motion for continuance, or new trial, and other like matters addressed to the discretion of the court, the refusel of which is not necessarily error, and only becomes so when that discretion is clearly abused, to the manifest injury of the party, or to the perversion of justice. No such abuse, nor indeed any abuse of discretion, appears in this case. It is true, the defendant in his affidavit, alleges that the witness was material. But he does not apply for a continuance on account of his absence; he does not state that he cannot prove the same facts by other witnesses, or that he cannot safely proceed to trial without his testimony; nor does any fact appear, that in the least evinces an improper exercise of the discretion of the court. All that does appear is, that the court assigned an erroneous reason for its judgment, which may, for aught that is apparent upon the record, have been correct.

We have gone over the errors assigned in this case, at length, in order to discover and establish the proper principles of law which should be observed in the adjudication of this and the like cases, brought under a statute comparatively new, and one, the construction of which is little aided by analogy or authority.

The rule of evidence here laid down, it is believed, is in conformity with sound reason and the requirements of substantial justice, and sustained by the leading authorities in England, and by eminent jurists in this country. It sufficiently guards the rights of the individual, but yet does not deny to the State the

JUNE TERM,
1853.

West
vs.
The State of
Wisconsin.

means of punishing the guilty. The rule adopted in the case in 6 *Conn. Rep., State vs. Roswell,* would operate in this State, in nine cases out of ten, as a complete immunity to offenders, when proof of marriage is essential to conviction. With the exception of a very few small localities, no marriages, or, at least, a very few, had been solemnized within this State, or Territory, as early as fifteen years ago. Comparatively few are living here, whose marriage was solemnized in the State. Perhaps one-third, or even a greater proportion, were married in Europe, according to the laws of different governments ; and of Americans, almost all were married in some one of the other States of this Union. It will be perceived, therefore, that the adoption of the stringent rule of evidence, contended for, and sanctioned by a majority of the court in 6 *Conn. Rep.* would be virtually a withdrawal of the protection of law from the marriage relation, because in nine cases out of ten, proof of that kind and degree would be utterly impracticable, and the prosecution of indictments for bigamy or seduction would require an examination of the registries of every Kingdom and Duchy of Europe, and of every State in the Union. Neither reason nor authority require of us the sanction of such a doctrine.

Nor are we inclined to throw obstacles in the way of the due enforcement of this statute, nor to question the wisdom of its enactment. If the evidence set forth in this bill of exceptions be true, this is a case which abundantly illustrates its policy and justice. A child of the tender age of fourteen years, is taken from the paternal roof, by a man of age and experience, a husband and a father, and a preacher of the Gospel, to live in his family, with the promise of protection and

instruction ; ignorant of danger, of passion, and of
temptation, she is confided to his care ; she joins the
circle of his fireside ; she attends upon his instruction ;
she listens to his prayers; she is at once his servant
and his pupil ; he is her guardian and her teacher,
and for a time his relation to her is almost paternal.
What child would dream of harm? What parent
would think to warn of danger? If all these sacred
considerations are not sufficient to abash lechery and
subdue lust, then, indeed, it is high time for the law-
giver to proclaim his sanctions, and for the courts to
take care that they be not evaded.

But, if this prosecution be a wicked scheme, sug-
gested by malice to ruin the innocent and worthy,
doubtless the searching scrutiny of the law and its
ministers will be found competent to its detection and
exposure.

A new trial is awarded.