# Martin *v.* The State.

*Indictment for Petit Larceny.*

1. *Larceny; corpus delicti; when sufficiently shown.*—Absolute, positive evidence is not necessary to establish the *corpus delicti* of a crime, but proof thereof may be made by circumstantial evidence; and if there is a reasonable inference deducible from the evidence of the existence of the *corpus delicti,* it is the duty of the court to submit the question of the

[Martin v. The State.]

sufficiency and weight of the evidence tending to support that
inference to the jury.

2. *Evidence; admissibility of testimony tending to show bias on
part of witness.*—On a trial in a criminal case, where one of
the witnesses' who testified' in behalf of the defendant was a
woman, it is entirely competent for the State on cross exami-
nation to show, if it can, the relations' existing between the
defendant and the woman, even though it involved illicit inter-
course, for the purpose of showing bias on the part of such
witness, unless she claims immunity from answering such
question on account of its subjecting her to a criminal prose-
cution, or on account of the tendency of her evidence elicited
thereby to degrade her.

3. *Petit larceny; charge to the jury.*—On a trial under an indict-
ment for larceny, in which the defendant is charged with
stealing a certain quantity of meat, charges which instruct
the jury that if they are not satisfied beyond a reasonable
doubt that the exact number of pounds of meat and the exact
quantity as laid in the indictment was stolen, are erroneous
and properly refused.

4. *Abstract and misleading charges* are properly refused.

5. *Petit larceny; verdict of jury and judgment.*—On conviction of
a defendant under an indictment charging petit larceny, the
imposition by the jury in its verdict of imprisonment to hard
labor for twelve months is mere surplusage, not rendering
the verdict void, the jury having no authority by their ver-
dict to impose punishment to hard labor; and such verdict
being valid as to the finding of the defendant guilty will sup-
port a judgment of conviction and sentence by the court to
hard labor to pay the fine and costs.

6. *Same; same.*—The power of a trial court to sentence a defend-
ant convicted of petit larceny to hard labor for twelve months
in addition to the fine and imprisonment imposed, is not affect-
ed or impaired by the mere fact that the jury in their verdict
attempted to impose such punishment by fixing his punish-
ment at twelve months hard labor for the county.

7. *Absent witness; right of defendant to compulsory process with-
in discretion of the trial court.*—In a criminal case, where wit-
nesses for the defendant failed to attend in obedience to sub-
poenas, and the court puts the defendant on showing as to
what such absent witnesses would testify, which showing is
admitted by the prosecution, it is within the sound discre-
tion of the court as to whether or not the case should be con-
tinued and attachment be issued against the absent witnesses;
and in the absence of any abuse of this discretion, the exer-
cise of it will not be reviewed on appeal.

[Martin v. The State.]

·APPEAL from the County Court of Lawrence.

Tried before the Hon. J. C. KEMPE.

The appellant in this case was tried under an indictment which charged that he "feloniously took and carried away one hundred and twenty pounds of meat consisting of seven middlings of the value of twelve dollars, the personal property of Sarah Moon," etc.

When the case was called for trial and the State's solicitor had announced ready, the defendant made known to the court that the subpoenas for all his witnesses had been duly returned executed, but that three of his witnesses had not appeared, and that, therefore, he was not ready for trial. On motion of the solicitor the court required the defendant to make showing as to what he expected to prove by the absent witnesses. The defendant reduced the showing to writing, and the State admitted it, and he was ordered to go to trial. Thereupon the defendant offered to prove that said absent witnesses were in the county of the trial and within the jurisdiction of the court, and moved that the cause be continued until a subsequent day of the term, and asked for compulsory process of attachment to compel the attendance of the absent witnesses. The court refused to allow the defendant to make the proof offered and overruled his motion to continue the case, and denied his request for the compulsory process. To each of these rulings the defendant duly excepted.

The State introduced as a witness one George Grimes, who testified that he lived in the house of Sarah Moon; that on the night of May 5th, 1898, "Miss Moon lost seven middlings of meat, weighing about 120 pounds, out of her smoke-house;" that on the morning of May 6th, he went to the smoke-house and found the hinges cut or broken and found tracks of two men around the door of the smoke-house; that the meat was worth 10 cents a pound; that on May 8th, following, he found some of this meat at the defendant's house. This witness then testified to his having put away the meat for Miss Moon in her smoke-house, and further testified that he knew by certain ways in which the meat was cut that the meat found at the house of the defendant was a part of

the meat that had been taken from the smoke-house. The meat was found at the house of the defendant while search was being made under authority of a search warrant by said witness together with other men. On the cross-examination of said witness, he testified that they found 55 pounds of meat at defendant's house, which was only about three and a half middlings. The witness was then asked the following questions and made thereto the following answers: "Q. Do you know that all these seven middlings you spoke of were stolen? Ans. No. I can't say. Q. Do you know that any of Miss Moon's meat was stolen? Ans. No. I know that the meat was missing Saturday morning. Q. Do you know when it went? Ans. No. I know that it was in there Friday, and it was gone Saturday morning, and the door to the smoke-house broken open and the tracks of two men around there. Q. How do you know that it was in the smoke-house Friday? Ans. I saw it there. Q. What time Friday did you see it? Ans. Friday morning. Q. How much meat was in the smoke-house? Ans. Ten middlings, besides some other pieces. Q. Where were you on this Friday morning? Ans. I don't know. Q. Do you know whether Miss Moon sold any meat on this Friday evening or not? Ans. No, I don't know of my own knowledge. Q. She had been selling meat before that time, had she not? Ans. Yes. Q. She sold some after that time, did she not? Ans. Yes. Q. Can you tell the jury whether or not Miss Moon sold these seven middlings of meat on this Friday evening that you missed on Saturday morning? Ans. Of course, I don't know that she did not. Q. Can you state as a fact that there was meat stolen from Miss Moon? Ans. No, sir; but to the best of my knowledge there had been."

The defendant then moved to exclude from the consideration of the jury all that the witness had said about finding the meat in the possession of the defendant, on the ground that it had not been shown that any meat had been stolen. The court overruled his motion, and the defendant duly excepted. There were other witnesses introduced on the part of the State who testified to substantially the same facts as did the defendant, and these other witnesses upon being asked questions eliciting their knowledge as to whether or not the meat

had been stolen, answered that they could not assert positively that the meat found at the house of the defendant was stolen. The defendant separately and severally moved to exclude the testimony of each of such witnesses, upon the ground that the *corpus delicti* had not been proved. The court overruled each of these motions, and the defendant separately excepted thereto. It was further shown by the State's evidence that the defendant left the county shortly after the commission of the crime, and remained away several months.

The defendant introduced as a witness in his own behalf, Josie Evans, who testified that she lived at the home of her father, one G. Knight; that her brother, Buster Knight, lived there also. That on the morning of May 6th, just a little before day, Buster Knight came into the kitchen where she was preparing breakfast and had some meat in a sack, and upon her asking him about it, he stated to her that he was going to carry it over to the defendant's house, in order to sell it to him. This witness testified that she was a widow, her husband having been dead about 4 years. Upon this witness testifying that she had been away from the neighborhood where the crime was committed for some time, having been in Tennessee, the State asked her, upon cross-examination, if it was not a fact that during her stay away from home, she was not with the defendant all of the time, and had not had criminal relations with him during that time. To this question the defendant objected upon the ground that it called for illegal, immaterial and irrelevant evidence. The court overruled the objection, and the defendant duly excepted. The witness answered in the negative. The other evidence for the defendant tended to show that he had not stolen the meat in question, and that he got the meat which was found in his house from Buster Knight and one McKleskeyEvans; that he bought the meat from Buster Knight early Saturday morning and that the meat he obtained from McKleskey was given him in payment of some work he had done for him.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following

[Martin v. The State.]

written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If you believe the evidence in this case, you must find the defendant not guilty." (2.) "There is not sufficient legal testimony before you to authorize you to convict in this case." (8.) "Gentlemen, unless the evidence satisfies you beyond a reasonable doubt that 120 pounds of meat was stolen, you must find defendant not guilty." (9.) "If you believe that the meat was stolen and that Martin received it knowing it to have been stolen, and was trying to conceal it, this without more, will not authorize you to convict him." (10.) "Gentlemen, unless the evidence satisfies you beyond a reasonable doubt that seven middlings of meat was stolen, you must find defendant not guilty."

The jury returned a verdict which was in words and figures as follows: "We, the jury, find the defendant guilty, and fix the punishment at hard labor for the county and a fine of $200." Upon this verdict a judgment of conviction was rendered and the following sentence pronounced: "It is, therefore, adjudged by the court that the defendant be and he hereby is, in accordance with the verdict of said jury, sentenced to twelve months' hard labor for Lawrence county, and he is sentenced to 70 days additional term to hard labor to pay said fine of $200. And the cost of this prosecution being $62.75, he is sentenced to an additional term to hard labor of 209 days to pay said cost, being allowed 30 cents per day on said cost," &c.

G. O. CHENAULT, for appellant.—To have compulsory process for witnesses, to compel their attendance in his behalf, is a matter of unconditional right; and to refuse the defendant's request therefor, was error.—Constitution, Art. I, § 7; *Childress v. State*, 86 Ala. 77; *Walker v. State*, 117 Ala. 85.

CHAS. G. BROWN, Attorney-General, for the State. The court did not err in refusing to set the cause for another day than that on which it was called. Upon the defendant's announcing that he was not ready, on account of the absent witness, the court required a writ-

ten showing of the testimony of his absent witnesses and defendant, without objection, made the showing, and the same was admitted by State.—*Winter v. State,* 123 Ala. 1; *Terry v. State,* 120 Ala. 286.

There was no merit in the motions to exclude the testimony of several witnesses as to finding the meat stolen. There was certainly very strong circumstantial evidence of the *corpus delicti,* the weight of which was to be determined by the jury solely. The *corpus delicti* need not be shown by direct evidence, but can be shown by circumstantial evidence.—2 McClain's Crim. Law, pp. 618-9; *Roberts' Case,* 61 Ala. 401; *Johnson's Case,* 47 Ala. 62; *Granison's Case,* 117 Ala. 22.

The charges requested by the defendant were properly refused.—*Tanner v. State,* 92 Ala. 8; *Raney v. State,* 91 Ala. 31; *Bir. R. & E. Co. v. Wildman,* 119 Ala. 547; 1 Brick. Dig. 339, § 59.

TYSON, J.—During the progress of the trial the defendant moved to exclude the testimony offered to show possession by him of some of the meat alleged to have been stolen, upon the ground that the *corpus delicti* had not been proved; also objections were made to the introduction of such testimony upon the same ground, which motions and objections were overruled. The affirmative charge was also requested by defendant upon the same theory, which was refused. In these several rulings, the court committed no error. The *corpus delicti* is a fact, proof of which may be made by circumstantial evidence. If there is a reasonable inference deducible from the evidence of its existence, the court must submit the question of the sufficiency and weight of the evidence tending to support that inference to the jury. There was such an inference in this case.—*Roberts and Williams v. The State,* 61 Ala. 401; *Granison v. The State,* 117 Ala. 22.

It was entirely competent to permit the State, on cross-examination of the witness Josie Evans, introduced by defendant, to show, if it could, their relations to each other, notwithstanding it involved their illicit sexual intercourse, for the purpose of showing her bias,

unless she claimed immunity from answering on account of subjecting her to a criminal prosecution, or on account of its tendency to degrade her. Moreover, her answers to the questions propounded by the solicitor with respect to this matter were favorable to defendant.

Charges 8 and 10 requested by defendant were predicated upon the proposition that if the evidence did not satisfy the jury beyond a reasonable doubt that the exact number of pounds of meat and the exact number of "middlings of meat," as laid in the indictment, were stolen, they should acquit the defendant. In other words if the defendant stole $3\frac{1}{2}$ middlings and not seven, that he should be acquitted. This is not the law, and there was no error in their refusal.

Charge 9 requested by defendant was abstract. There is no evidence tending to show that the defendant knew the meat to have been stolen when Buster Knight delivered it to him. Furthermore, the words "without more," had the charge been otherwise unobjectionable, would have vitiated it, on account of their misleading tendencies.—*Birmingham Railway & Electric Co. v. Wildman,* 119 Ala. 547; *Raney v. The State,* 91 Ala. 29.

In convictions of petit larceny, the imposition of imprisonment in the county jail or hard labor for the county as a punishment is for the court and not for the jury. The jury may simply render a verdict of guilty without imposing a fine, or they may in their discretion assess a fine not to exceed $500. But in either event, it is the duty of the court to impose as a punishment imprisonment in the county jail or hard labor for the county for not more than twelve months.—Code, §§ 5050, 5415, 5419; *Lacey v. The State,* 58 Ala. 385; *Moss v. The State,* 42 Ala. 546. In this case the jury fixed the punishment at twelve months' hard labor for the county and a fine of two hundred dollars. The imposition of twelve months' hard labor for the county by the jury is mere surplusage, not rendering the verdict void; the jury having no authority by their verdict to impose it. Such a verdict is valid as to the finding of guilty and the assessment of the fine, and is sufficient to support the judgment of conviction and sentence by the court of the

[Stahmer v. State.]

defendant to hard labor to pay the fine and costs. The sentence by the court of the defendant to hard labor for twelve months as an additional punishment was clearly within its power and authority, and the mere fact that the jury by their verdict attempted to do so does not impair or affect this power to do so.—*Taylor v. The State,* 114 Ala. 20.

Great stress is laid in argument upon the refusal of the court to issue an attachment for two absent witnesses upon whom subpœnas had been served. It was within the sound discretion of the court to issue the attachments requested by the defendant, and it does not appear under the circumstances that there was any abuse of this discretion.—*West v. The State,* 1 Wis. 209; *Respublica v. Duane,* 4 Yeates (Pa.), 347; *Stephen v. The People,* 19 N. Y. 549; *Peterson v. The State,* 63 Ala. 113; *Crawford v. The State,* 44 Ala. 382; *Davis v. The State,* 92 Ala. 20; *Terry v. The State,* 25 So. Rep. 177.

Affirmed.