26 So.2d 120

### MONCRIEF v. STATE.

6 Div. 233.

Court of Appeals of Alabama.
May 14, 1946.

Horace C. Alford, of Birmingham, for appellant.

Wm. N. McQueen, Atty. Gen., and Clarence M. Small, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

Appellant, Ruben Moncrief, was convicted of the offense of buying, receiving, concealing or aiding in concealing stolen property, etc. The indictment returned by a Grand Jury of Jefferson County, charged that said defendant, Ruben Moncrief,—"did buy, receive, conceal or aid in concealing forty-two sacks of sugar of the aggregate value of $241.50, the personal property of J. E. Ashton, knowing that it was stolen, and not having the intent to restore it to the owner," etc..

The case, numbered 81280, was tried before a jury in the court below and said jury on April 27, 1945, returned the following verdict; "We, the jury, find the defendant in case #81280 guilty as charged in the indictment, and fix the value of the stolen property at $5.00."

On the 2nd of May, 1945, said defendant filed his motion for a new trial which was continued by the trial court to May 4, 1945, and on that day, the trial court overruled and denied said motion and the defendant excepted.

Thereafter, on the 4th day of May, 1945, the judgment of the trial court was pronounced and entered adjudging said defendant—"guilty as charged in said indictment, in accordance with the verdict of the jury in this cause and it is the judgment of the Court and sentence of the Law, that the said defendant, the said Ruben Moncrief, be imprisoned in the penitentiary in the State of Alabama for a term of two years."

In the oral charge to the jury, the trial court, with respect to the form of the verdict of the jury, charged the jury as follows: "Taking the case of Ruben Moncrief, who is charged with buying, receiving, concealing or aiding in the concealment of stolen property,—the form of your verdict in that case, should you convict the defendant would be 'We, the jury, find the defendant guilty as charged in the indictment,'—he is only charged with buying, receiving, concealing or aiding in the concealment of stolen property—and fix the value of the stolen property at so much; and, should you find the defendant guilty and fix the value of the stolen property at Five Dollars, or more, that would conclude your verdict, after one of your number signed it as Foreman."

The defendant excepted to that part of the court's oral charge that applied to Ruben Moncrief as to the value of the property, and as to Grand Larceny. When the exception was taken, the court said: "If stolen from a shop, store, or warehouse?",

to which statement of the court, counsel for the defendant replied: "You didn't say that, Judge."

And again the court said: "I know, but I am taking the evidence in the case, of course."

To which statement of the court, counsel for the defendant said: "I just want to reserve an exception."

Thereupon the court said: "In other words, there is no evidence except that the property, if it was stolen at all, was taken from a shop, store or warehouse."

We will recur to this question later on in this opinion.

Ruben Moncrief has appealed to this court from the judgment of conviction and of sentence pronounced against him by the trial court and also from the judgment of that court overruling and denying his motion for a new trial.

Mr. J. E. Ashton, the alleged owner of the property alleged to have been stolen testified as a witness for the State. He was engaged in the business of manufacturing cookies at No. 4500 1st Avenue, North, in the City of Birmingham, Jefferson County, Alabama, and at the time the property was alleged to have been stolen, he had in his employ, a negro boy named James B. Stewart. While the testimony of Mr. Ashton as to the amount of sugar he missed from his place of business is not entirely satisfactory, yet we think that it tends to show that he lost forty-two sacks weighing 100 pounds each. The wholesale price of sugar at that time was $5.75 per 100 pounds. While Mr. Ashton testified that he lost forty-two sacks of sugar from his place of business, the State introduced the above named James B. Stewart as a witness, who testified in substance that on or about the 17th day of March, 1944, he broke into and entered the storehouse or building in which Mr. Ashton conducted his business and took therefrom four sacks of sugar and only four sacks of sugar. He positively, plainly and unequivocally stated the amount of sugar taken by him from Mr. Ashton's place of business was four sacks of sugar. He testified that he was aided in carrying these four sacks of sugar away from said place of business where he had stolen the same by one Timothy Walker; that he car-ried these four sacks of sugar to Timothy Walker's house, and that Timothy Walker was present when he left it there; that Ruben Moncrief was not there at that time but he was off at a carnival, and he later saw him at the carnival and had a conversation with him; that he told Moncrief he had some sugar up at Moncrief's house, and that he and Moncrief went up there; that Timothy Walker and Ruben Moncrief lived in the same house and that he offered to sell two sacks of the sugar at $8 a sack to Moncrief, and that he and Raymond Mc-Ghee took the other two sacks to another place; that when he offered to sell Moncrief the sugar, Moncrief told him that he would pay for it when he got some money, and that the two sacks of sugar which he and Raymond McGhee took elsewhere was taken from Timothy Walker's house; that Moncrief told him that he would take the two sacks of sugar if he got some money.

On cross-examination this witness testified that he got with Timothy Walker on the night of March 16, 1944, he got off from his work at 4:30 in the afternoon, and after going to his home and to the carnival, he got with Timothy Walker that night about 8 o'clock; that he succeeded in getting Timothy Walker to go with him to the place that was burglarized and from which the four sacks of sugar were taken and that Timothy stayed down on the ground and as the witness would bring out a sack of sugar he would pass it down to Timothy until all of the four sacks were on the ground; they toted this sugar from this place to Timothy Walker's house, and there they stacked it or placed it in a closet or toilet; all of this was done without any knowledge on the part of Moncrief; after the sugar was carried to this place then Stewart went off looking for Moncrief and told him he had the sugar up at the house and carried Moncrief back with him and offered to sell it to him at $8 per sack; Moncrief did not have the money to buy the sugar, and then Stewart got Raymond McGhee and offered to sell him two sacks of it at $8; the outcome of this offer to Raymond McGhee was that McGhee and Stewart carried two sacks of the sugar off to some other house; as to the two sacks left at Timothy Walker's house the testimony does not show that

there was any definite agreement between Stewart and Moncrief that the sugar was turned over to Moncrief, or that Moncrief agreed unconditionally to take the same; he said he would buy it if he could get the money; when the sugar was found it was in Timothy Walker's chifforobe, locked up and the evidence does not show that Moncrief placed it there, or that he exercised dominion and control over it.

The indictment returned against this defendant did not charge that the defendant bought, received, concealed or aided in concealing the sugar described in the indictment, knowing that it had been stolen from the shop, store or warehouse of J. E. Ashton, the owner of said sugar, and therefore, when the defendant, or his counsel, announced ready for trial, he doubtless did so under the belief that if the evidence should show the value of the property concealed, without intent to restore it to its owner, was less than $25, then at best the State could only convict the defendant of a misdemeanor, that is of petit larceny. It is our judgment that in order for the trial court to have been justified in charging the jury that if the jury should find the defendant guilty and fix the value of the stolen property at $5 or more, that would conclude their verdict. For that charge to have been correct and applicable to the facts of this case, it was necessary for the indictment to have charged that the defendant knew the sugar had been stolen from the shop, store or warehouse of J. E. Ashton, the owner of said sugar. It is our opinion that the trial court erred to the material prejudice to the defendant in charging the jury as above stated and to which charge, the defendant excepted.

In some respects the case of Martin v. State, 125 Ala. 64, 28 So. 92, 95, bears a striking similarity to some aspects of the case at bar. In the Martin case, the indictment charged that the defendant feloniously took and carried away one hundred twenty pounds of meat, consisting of seven middlings, of the value of $12, the personal property of Sarah Moon. The proof in that case showed that said meat if stolen at all was stolen from the smokehouse of Sarah Moon. Larceny from the smokehouse of Sarah Moon was a felony if the property alleged to have been stolen and proved to have been stolen, was $5, or more. The proof in that case tended to show that the defendant was found in possession of fifty-five pounds of meat, comprising only about three and a half middlings. The jury returned the verdict finding the defendant guilty and fixing his punishment at hard labor for the county and a fine of $200. As to this phase of the verdict our Supreme Court held that in conviction of petit larceny, the imposition of the imprisonment in the county jail or hard labor for the county as a punishment is for the court and not for the jury. The Court said: "The jury may simply render a verdict of guilty without imposing a fine, or they may, in their discretion, assess a fine not to exceed $500."

There was no question in the Martin case that the property stolen was not stolen from the smokehouse of Miss Moon nor was there any question that the reasonable market value of the meat stolen exceeded $5 in value. Yet, in that case, the judgment convicting the defendant of petit larceny was pronounced and entered and on appeal our Supreme Court affirmed that judgment.

In our view of this case, it is not necessary to consider other alleged errors of the trial court upon this appeal. What we have said above, demands that the judgment of the lower court be reversed and this cause be remanded for another trial.

Reversed and remanded.