State vs. Nathaniel.

No. 13,274.

STATE OF LOUISIANA VS. THOMAS NATHANIEL.

## SYLLABUS.

1. The finding of the District Judge that, irrespective of the question, "whether the provision of Act No. 67 of 1894, requiring the applicant to set forth, under oath, what he expects to prove by the additional witnesses whom he desires summoned, is constitutional or not," the defendant herein had not exercised due diligence with respect to the summoning of such witnesses, will not be reviewed by this court, since it presents no disputed question of law, but merely an issue of fact.

2. The provision of Act 67 of 1894, which requires that an application for subpœnas for additional witnesses shall set forth, under oath, what the applicant expects to prove by such witnesses, does not contravene the provision of Article 9 of the Constitution, which secures to the accused in a criminal prosecution the right "to compulsory process for obtaining witnesses in his behalf." The statutory provision in question is intended to apply only to witnesses summoned at the expense of the parish, and is not restrictive of the right of the accused to compulsory process for obtaining witnesses at his own expense.

APPEAL from the Eighteenth Judicial District, Parish of Lafourche. *Caillouet, J.*

*Milton J. Cunningham,* Attorney General, and *Leonard C. Moise,* District Attorney, for Plaintiff, Appellee.

*John S. Billiu* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J. The defendant was found guilty of murder and sentenced to be hanged, and, a new trial having been refused, has appealed.

The only question reserved for the consideration of this court is presented in a bill of exception, which reads as follows, to-wit:

"Be it remembered that, on the trial of this cause, the accused, " through his counsel, moved a postponement of the trial for the pur- " pose of obtaining certain witnesses, which were important for his " defense, said motion being in writing and being made part of this " bill of exception, together with a statement of P. J. Aucoin, deputy " clerk, also annexed hereto. Said motion showing (that) the process

" (application) for subpœnas had been made in due form, and refused
" by said deputy clerk, for the reason set forth in his statement, which
" is also corroboration of the said motion.

"The said motion having been submitted to the court, together with
" the statement of said clerk, at the trial hereof, the same was refused
" and overruled," etc.

The motion referred to reads:

"And now, into this Honorable Court, comes Thomas Nathaniel,
" defendant in a trial for murder, and, through his counsel, gives this
" court to know and be informed that, in due time, he applied to the
" clerk of said court for proper process to compel the attendance of
" the following named witnesses for the defendant, to-wit:   Tucker
" Adam and Camille Smith, the first named on the order book.   That
" the clerk of said court refused to issue said subpœna, on the ground
" that under Act No. 67, Acts of 1894, he could not issue a subpœna
" for more than six witnesses, unless an order and affidavit were pre-
" sented, as required by said act.   That undersigned counsel refused
" to make application, (or) affidavit, or to disclose what he proposed
" to prove by said witnesses in the instant case, where it is an inqui-
" sition for murder, and hence, your defendant is not ready to go to
" trial in the absence of said witnesses, who are important for his
" defense; and would move a postponement of the case until said wit-
" nesses can be summoned.   That said act, requiring an affidavit to
" disclose the testimony, before the trial is commenced, is illegal and
" non-constitutional in the present indictment for murder against
" said defendant, and he has been illegally deprived of his rights
" under the Constitution, as aforesaid, Article 9.   Wherefore he prays,
" that the clerk be ordered to issue said subpœna for said witnesses,
" and postponement be had until their attendance upon this court be
" had," etc.

The statement of the clerk, also made part of the bill, reads as
follows:

"The counsel for the accused placed an order on the witness book
" for additional witnesses over and above the limitation of six for
" which process had already issued.   I refused to issue subpœnas,
" because I was bound, under Act 67 of the Acts of 1894, and said so
" to the counsel for the accused and I required him to make the
" proper affidavit, as required by said act, and to apply to the judge;
" counsel of accused said that he would not do so, because he could

State vs. Nathaniel.

" not disclose, anterior to the trial, what·said witnesses would prove.
" The allegations in the motion for postponement are true."

The judge *a quo,* in signing the bill, gives the following reasons for denying the motion, to-wit:

1.   That due diligence was not used to secure the presence of the witnesses named, in this; that the case being fixed for Monday, September 18th, the application for subpœnas for said additional witnesses was made on the Saturday preceding, to the clerk, and the refusal of the latter to issue said subpœna was not called to the attention of the court until Monday; when the case was called for trial, and no application was previously made to the judge, who was present, at the parish seat.

2.   That it does not appear, from the motion to postpone the case, that the testimony of the witnesses, whose presence was desired, would have been material, or even competent.

3.   That it does not appear from said motion, that said witnesses could easily have been produced at a time to which the case might have been postponed.

4.   That said motion was not sworn to.

The judge further states that the six witnesses who were subpœnaed on behalf of the accused, were put on the stand as character witnesses, and were not interrogated on any other point.

Counsel for the State refer to Act No. 139, of 1890, and to the Constitution of 1879, as the law governing the case.   The second section of Act No. 67, of 1894, reads as follows:

"Section 2.   Be it further enacted, etc., That Act No. 139 of 1890, and all other laws, or parts of laws, inconsistent herewith are hereby repealed."

It needs no argument to demonstrate that, the defendant, having been tried under the dominion of the Constitution of 1898, the proceedings must conform to the provisions of that instrument.   As to the question at issue, however, the language of the two Constitutions is, practically, identical, and confers upon the accused the right "to have compulsory process for obtaining witnesses in his favor."   (Constitution of 1879, Article 8; Constitution of 1898, Article 9).   The particular, and only, point made in behalf of the defendant, is, that the Act of 1894, in so far as it requires, as a condition precedent to the obtention of "compulsory process," that the accused should disclose what he expects to prove by the witnesses as against whom he

asks such process should issue, goes beyond, and is in contravention of, the Constitution; his counsel, arguing that, under the Constitution, the accused was entitled to the process, without making any disclosures, and that its refusal, and the refusal to "postpone" the case, on account of the absence of such witnesses, amounted to the denial of a legal and constitutional right.

The section containing the paragraph which is objected to—reads as follows:

"That in all criminal cases, on final trial, each side shall not be allowed to summon more than six witnesses, unless the District Attorney, representing the State, or the accused, or his counsel, as the case may be, shall present a written application to the judge, setting forth, under oath, what he expects to prove by the additional witnesses, that an additional number is required to meet the ends of justice, and to make a proper prosecution, or defense, as the case may be; provided, that in no case shall the parish pay more than twelve (12) witnesses on each side in any case, and whenever more than that number have been summoned, and claim pay for their attendance, the judge shall designate which twelve (12) shall be paid, according to the financial condition of the witnesses respectively; and the trouble and expense entailed by their attendance."

It is not charged that the act is unconstitutional in requiring that written application shall be made to the judge, or in exacting that the applicant shall set forth, under oath, that the additional witnesses are required to meet the ends of justice and make a proper defense in the case. There is no suggestion, however, that these conditions were complied with, and the trial judge was not afforded the opportunity of passing upon the question, whether, upon an application properly and seasonably made, for subpœnas for additional witnesses, the accused could, constitutionally, be required to disclose what he expected to prove by such witnesses, for the reason that no such proper and seasonable application was made. An application was made, as appears from the bill of exception, to the clerk, two days before the trial, but it did not conform to any of the conditions imposed by the statute, since it was made to the clerk, not to the judge; it was unsworn, not under oath; and it failed to set forth so far as the record discloses, either what was expected to be proved, or that the witnesses were material, or were required to meet the ends of justice and enable the defendant to make a proper defense. The attention of the judge

was not called to the matter until "just at the time when the case was called for trial," when the motion was offered, for the subpœnas, and for a "postponement" of the trial, "until said witnesses could be summoned," and "until their attendance upon the court is had."

This motion was unsupported by affidavit. It did not allege due diligence as to any previous effort to obtain the desired witnesses; or that their testimony would be admissible or material, or that the witnesses resided in the parish, or in the State, or elsewhere; nor did it allege that it would be possible to procure their attendance at any subseqeunt time.

It is true that it is said in the motion, on behalf of the defendant, that the witnesses are "important for his defense," but the statement was unsupported by affidavit, and, being unexplained, afforded the judge no opportunity of forming an opinion as to its verity. Under these circumstances, the judge *a quo* was not called upon to decide whether the Act of 1894, as to the particular provision which is made the subject of attack, is constitutional or not, nor did he pass upon that question. His ruling was based upon the defendant's lack of diligence, and upon the insufficiency of the motion, irrespective of the constitutional question presented, and, so far as we can see, his conclusion would have been the same, if that question admitted of a decision favorable to the views expressed by the defendant's counsel.

We have been unable to distinguish, for the purposes of this case, between the application as made for a "postponement" and an application for a "continuance." It is true that the word "postponement" is usually preferred, when the purpose is to obtain a continuance to another day during the term at which the case is fixed, rather than to a future term; but the terms of the District Courts are now continuous, and, in this particular case, the postponement was asked until witnesses, not alleged to reside in the parish, or State, or elsewhere, and not alleged to be obtainable at any time, should be summoned, and their attendance obtained. The delay, therefore, if granted in accordance with the language of the application, would have been of the most indefinite character. The rule of practice, in such cases is well settled.

"To sustain the application for continuance, the affidavit should show—

"1. The material nature of the evidence sought.

"2. High degree of probability that it may be secured.

"3.   The exercise of due diligence in the effort already made to
" obtain it.

"The case of King vs. D'Eon, 1 W. Black, 510, and 3 Burr, 1513, is
" a leading case on this subject, and contains the principles above
" formulated, which have since prevailed in reference to a continu-
" ance.   Lord Mansfield says, in that case:   'Three things are neces-
" sary to put off a trial.'

"1.   That the witness is really material, and appears to the court
" to be so.

"2.   That the party who applies has been guilty of no negligence.

"3.   That the witness can be had at the time to which the trial is
" deferred," etc.   See Rice on Evidence, Vol. 3, Sec. 116.

"The doctrine is, that though a cause is ready for trial, either party
" may, as of right, or in the discretion of the tribunal, depending on
" the blended law and fact, have it continued to a future term, or post-
" poned to a later period in the same term, if, in the circumstances,
" justice so requires.

"When not of right, the motion for continuance is addressed to the
" judicial discretion, and the decision of the trial court can, only in a
" strong case, and in a part of the States, be reversed by a higher
" tribunal.

  *   *   *   *   *   *

"The rules for continuance are substantially the same in criminal
" cases as in civil.   But, partly from statutes, and partly from judi-
" cial decisions, differences in practice in the respective States have
" arisen."   Bishop's New Crim. Pr., Sec. 951.

In this State, it has been held that the Supreme Court "will not,
" upon an appeal, re-examine the decision of a district judge, upon a
" question of fact, such as, whether due diligence had been used to
" procure the attendance of a witness."   State vs. Brette, 6th Ann.,
653.

And this ruling is based on the conclusion that the court is without
jurisdiction in the premises; its jurisdiction in criminal cases being
confined to law, alone.   State vs. Hunt, 45th Ann., 438; State vs.
Bradley, 6th Ann., 554.   See also State vs. Rodrigues *et als.*, 45th
Ann., 1041 (and authorities there cited); State vs. Celestin, 40th
Ann., 273; State vs. Guillory, 45th Ann., 31.

If, however, the application for continuance, in the instant case,
could be considered as properly presenting the question of the defend-

ant's right, under the Constitution "to have compulsory process for obtaining witnesses in his favor," without disclosing what he expected to prove by said witnesses, the law is still against him. Every Constitution which the people of Louisiana have adopted has contained the provision relied on, in substantially the same words as are used in the Constitution of 1898, and, so far as we have been able to discover, it has never been held that the right to "compulsory process" entitles an applicant to a continuance, save upon his compliance with those conditions, which are required alike by the common law, and by the jurisprudence of this State.

The question has arisen, elsewhere, as to whether the right to "compulsory process" carries with it the right to have the witnesses brought in without expense to the defendant, and it has been settled in the negative. Mr. Rice says:

"The Constitution of the United States, and the Constitutions or " statutes of the several States, secure to the accused the right to com-" pulsory process for obtaining witnesses in his behalf. * * * " This provision has been construed to mean that the accused shall "not be debarred the right of issuing subpœnas for his witnesses, as " in civil cases, and not to entitle him, on application, to a decree of " the court, for an allowance to secure their attendance." Rice on Evidence, Vol. 3, Sec. 108.

"A defendant's constitutional right to compulsory process does not " require the State to pay their (the witnesses) fees." Bishop's New Criminal Practice, Sec. 959.

The State of Louisiana has chosen to allow a defendant in a criminal case compulsory process for the obtention of six witnesses, without charge, and has imposed conditions with respect to the further enjoyment of that particular privilege. He may obtain such process for additional witnesses provided he is willing and able to bear the expense. But, in any case, he is bound to apply for the process in due time, and to the proper authority, and, if he has exhausted his privilege, should tender the amount necessary to defray the expense of bringing in the additional witnesses, and a failure in either of these particulars is a lack of due diligence. Thus

"A party is not entiled to a continuance on account of the absence " of a witness for whom a subpœna was not delivered to the sheriff, in " compliance with a rule of the court." Brown vs. Forsyth, 10 R., 116.

Nor does the exercise of due diligence with respect to the issuance

of a subpœna, and its delivery to the sheriff, relieve him of the obligation of complying, in other respects, with the rule which has been heretofore stated, in order to obtain a continuance by reason of the absence of a witness who has actually been summoned. For, if the right to "compulsory process," which has existed ever since the State was organized, could be construed to mean that the defendant in a criminal prosecution could, upon the day of trial, demand and obtain a continuance, in order to bring in a witness whom he had caused to be summoned, without making a satisfactory showing that the continuance was not intended merely for delay and to enable him to escape conviction and sentence without trial, no criminal could ever be convicted. That no such interpretation can properly be placed on the constitutional provision relied on, is plain upon general principles, and upon the face of the jurisprudence which has been established during the long period in which that, or a similar, provision has been in force.

In State vs. Lee, 50th Ann., 9, the defendant, who was indicted for murder, applied for a continuance, on the ground of the absence of a material witness. The State, agreeably to the provisions of Act 84 of 1894, offered to admit that the witness, if present, would testify as stated in the affidavit. It was conceded that the defendant had used due diligence, and that the testimony would be competent and material to the defense, and the accused insisted upon his right to compulsory process, in order to secure the personal attendance of the witness, and his presence before the jury, and contended that Act 84 of 1894 contravened the constitutional provision entitling him to such compulsory process. The trial judge refused the continuance and was sustained, on the appeal, in an opinion in which the constitutionality of the act in question was distinctly affirmed. Prior to the adoption of that act, it had been held that a demand for continuance, under such circumstances, could not be met by an admission that the witness would testify as stated in the affidavit, but that the fact expected to be proved must be admitted. State vs. Brette, 6th Ann., 653.

In either case, however, the applicant, after having complied with the law, and having exercised due diligence, to obtain the absent witness, was held bound to disclose, under oath, what he expected to prove by him, and the trial judge was afforded an opportunity to determine, for himself, whether the testimony would be competent and material.

The appellant claims nothing in this court by reason of the motion for new trial filed in his behalf, which, so far as appears from the record, does not allege error in the verdict, or injury or prejudice, of any kind, to the defendant.

Finding no error therein, it is ordered, adjudged, and decreed that the judgment appealed from be affirmed.

Rehearing refused.