Pittman v. The State of Florida—Syllabus.

---

J. T. PITTMAN, PLAINTIFF IN ERROR, v. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Chapter 5132 of the Laws of 1903, prescribing the requisites to be complied with by parties charged with crime in applications for the procurement of witnesses for their defense at the cost of the county, is not in conflict with or violative of either Section 11 or Section 14 of the declaration of rights of the State Constitution of 1885. And, when the cost of the procurement of such witnesses is initiatorily proposed to be thrown upon the county, a sound judicial discretion is vested in the trial judge to determine whether or not the statutory requirements have been properly compiled with, and also to determine the *bona fides* of such application, and an appellate court will not disturb the action of the trial judge upon such application, unless an abuse of this judicial discretion is clearly made to appear.

2. Application under Chapter 5132 of the Laws of 1903, for the procurement of witnesses, at the cost of the county, for the defense of parties charged with crime, should be seasonably made at the earliest reasonable opportunity, and not withheld until the case is actually called for trial.

3. The sixth amendment to the Federal Constitution has reference only to powers exercised by the government of the United States, and not to those of the States.

Pittman v. The State of Florida—Syllabus.

4. In criminal as well as in civil cases an application for a continuance is addressed to the sound judicial discretion of the trial court, and the denial of such a motion will not be reversed by an appellate court, unless there has been a palpable abuse of this judicial discretion, which must be clearly and affirmatively made to appear in the bill of exceptions, the rule being that motions for a continuance in criminal cases are to be even more closely scanned than in civil cases, because of the greater temptation to delay.

5. Where there are assignments of error in a criminal case which are not argued, but merely repeated and insisted upon in the brief of plaintiff in error, an appellate court is not required to do more than read the record carefully in connection with such assignments, and if it discovers no plain or glaring error prejudicial to the plaintiff in error, under such assignments, the judgment will not be reversed because of such assigned errors.

6. An appellate court will not consider any grounds of objection to the admissibility of evidence, except such as were made in the court below; the plaintiff in error being confined to the specific grounds of objection made by him in the trial court.

7. The trial court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will only be interfered with by an appellate court when a clear abuse thereof is made to appear.

8. If evidence apparently incompetent only because its relevancy is not apparent, or because it is not the best evidence, is offered, the court may, in the exercise of its discretion, receive it conditionally, if counsel gives assurance that he will supply the necessary foundation afterward. If, however, such evidence is so conditionally received, and the necessary connecting evidence is not introduced, so as to show the relevancy of the admitted evidence, the court should exclude the evidence so received on its own motion, but if the failure to connect be not apparent or glaring, the objecting party should move to exclude.

9. General objections to evidence proposed, without stating the precise grounds of objections, are vague and nugatory, and are without weight before an appellate court, unless the evidence objected to is palpably prejudicial, improper, and inadmissible for any purpose or under any circumstances.

10. Evidence of circumstances tending to connect the accused with the commission of the alleged crime, even though inconclusive, is properly admitted.

11. In a prosecution for forgery it is not error to permit a witness to testify as to the signature of the defendant, when such witness has testified that he had seen defendant sign his name on different occasions though he was familiar with defendant's signature.

12. In a prosecution for forgery it is competent to show that about the time of the alleged forging and uttering by defendant other similar instruments had been forged or uttered by him, in pursuance of a general scheme to defraud, and the fact that defendant was under indictment for the forgery of some of the other instruments does not affect their admissibility in evidence.

13. For the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected with the cause or parties thereto, upon which matters he may be contradicted by other evidence, and the rule applies to the cross-examination of a defendant, when he voluntarily offers himself as a witness, to the same extent with like limitations as to other witnesses. The motives, interest, or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and as to such matters he may be contradicted.

14. An assignment predicated upon the refusal of the trial court to give a certain requested instruction cannot be considered by an appellate court, in the absence of any showing that an exception was taken to said ruling.

15. Evidence examined and found sufficient to support the verdict.

This case was decided by Division A.

Writ of Error to the Circuit Court for Holmes County.

The facts in the case are stated in the opinion of the Court.

*Benjamin S. Liddon,* for Plaintiff in Error.

*W. H. Ellis,* Attorney General, and *J. Walter Kehoe,* State Attorney, First-Judicial Circuit, for the State.

SHACKLEFORD, C. J. The plaintiff in error, J. T. Pittman, hereinafter referred to as the defendant, was indicted by the grand jury at the Spring term in May, 1905, of the Circuit Court for Holmes County for the crime of forgery. The indictment contained two counts, the first count charging the defendant with the forgery of a certain written instrument therein fully described, and the second count charging the defendant with the uttering and publishing of the same written instrument which in the first count he was charged with having forged. The defendant was tried at the fall term of said court held in October, 1905, which trial resulted in his conviction of the crime charged in the second count of the indictment, and he was sentenced to be confined at hard labor in the State prison for the term of five years. From this judgment and sentence he seeks relief here by writ of error, returnable to the present term. The person whose name the defendant was charged with having forged was C. L. Douglass and the written instrument to which the name of the said Douglass was appended was a note under seal, dated the 4th day of May, 1904, for the sum of $46.00, in payment for 20 sacks of fertilizer, and payable

to the Virginia-Carolina Chemical Company, which was alleged in the indictment to be a corporation, or to its order, on or before October, 1904.

The first error assigned is that "the court erred in refusing to issue subpoena for witnesses W. R. Stanley and J. M. Holliday upon the affidavit of the defendant of insolvency made October the 9th, 1905."

The bill of exceptions discloses that on the 9th day of October, 1905, the defendant presented his affidavit to the trial court, reciting therein the fact of his insolvency and that C. A. Douglass, W. R. Stanley, W. D. Locke and J. M. Holliday were material witnesses on behalf of the defendant in said cause, by whom he expected to prove that each of said witnesses was present when the note in question was executed and saw C. L. Douglass execute said writing, and defendant prayed that subpoenas issue for each of said witnesses. The court refused to issue subpoenas for all of the requested witnesses for the reason that at the time the application was made for the witnesses applications were made by the defendant for witnesses in eight other cases pending against him upon indictments found by the same grand jury charging him with other forgeries and uttering other forgeries about the same time of the one charged in the indictment in question, in most of which applications more than two witnesses to the same fact were asked for, in several cases the same witnesses being asked for in more than one application, and in the application in question four witnesses to the same fact were asked for, but allowed two of said witnesses to be selected by the defendant to be subpoenaed. The defendant excepted to the ruling of the court but selected the names of W. D. Locke and C. A. Douglass as the two witnesses to be allowed upon the applications, stating that in more than one of the

other cases the court had, upon his application, allowed subpoenas for W. R. Stanley and J. M. Holliday.

In his brief defendant admits that "the application for witnesses was not a full and technical compliance with the Act, Revised Statutes Section 2868, or Chapter 5132 of Acts of 1903, so as to entitle the defendant to have process for witnesses at the expense of the State or rather County."

We fully concur in the admission, but, even if all of the requirements of the law relating thereto had been fully complied with, we fail to see wherein the defendant was harmed in any way by the action of the court, inasmuch as all four of the witnesses named in the application had been subpoenaed by the court, at defendant's request, in other prosecutions for forgery pending against him, for the same term of court at which he was tried on the indictment in the case at bar. We are of the opinion that this assignment is utterly without merit, therefore further discussion of it would be fruitless.

The second assignment is that "the court erred in refusing to direct subpoenas to be issued for Frank Richardson and J. M. Holliday upon the praecipe of the defendant."

In his brief defendant says this assignment "presents a legal proposition involved in better shape," and he submits the argument made in support of it in support of the first assignment as well.

We find from the transcript that the defendant was arraigned and entered his plea of not guilty on the 19th day of October, 1905; that on the 24th day of said month he filed a praecipe with the clerk for a subpoena for the two witnesses, J. M. Holliday and Frank Richardson returnable instanter; that on the same day of the filing of said praecipe defendant filed a motion for an order from

the court directing the clerk to issue the subpoenas, reciting therein that the clerk refused to issue the same, and also filed with the motion his affidavit, in which M. C. Pittman joined, to the effect that each was a defendant in the cause and innocent of the crime charged, that said witnesses are material and that defendant could not safely go to trial without them, that both witnesses reside in Holmes County and that the clerk refused to issue a subpoena for them. We further find that, when the motion came on to be heard, the court interrogated the clerk concerning the matter, who replied that he had refused to issue the subpoena for the reason that defendant had neither paid nor tendered to him the costs on that behalf, but had failed or refused so to do, and that said witnesses had not been allowed to be summoned upon an affidavit of insolvency, whereupon the court overruled the motion and refused to direct the clerk to issue the subpoenas, to which ruling the defendant excepted, and this forms the basis for this assignment.

Defendant admits that M. C. Pittman signed the affidavit with him through mistake. In passing upon the first assignment we found that J. M. Holliday was one of the four witnesses named in the application of defendant for subpoenas, which application recited that defendant expected to prove that each of said witnesses was present when the note in question was executed and saw C. L. Douglass execute the same, that the court allowed defendant to select any two of said witnesses to have subpoenaed, that defendant selected W. D. Locke and C. A. Douglass, the other two witnesses, J. M. Holliday and W. R. Stanley having been ordered subpoenaed upon application of defendant for the same term of court in other forgery prosecutions pending against him. It is admitted that no order had been made by the court for sub-

poenas for these two witnesses in the case at bar upon an insolvency affidavit of defendant. Whether Frank Richardson, the other witness named, had been ordered subpoenaed in any of the other prosecutions pending against defendant we are not advised and neither are we informed what defendant expected to prove by said witness. We have already seen that defendant was arraigned on the 19th day of October, but had presented his praecipe and application for witnesses on the 9th day of said month. We further find that the instant case was called for trial on the 24th day of October, on which day the defendant filed his praecipe for the two witnesses and also made his application to the court for an order to the clerk directing the issuance of subpoenas for them. No reason or excuse whatever is shown for the delay in seeking to have the witnesses subpoenaed. Neither was the court informed as to where the witnesses were then to be found, the only information given being that they resided in Holmes County. In his application for subpoenas the defendant asks for the postponement of the case until he could procure the attendance of the two witnesses or else take their depositions. We further find that on the 17th day of October the defendant filed a motion for a continuance of the case until the next term on the ground of the absence of C. A. Douglass and W. D. Locke, two material witnesses, by whom defendant said he expected to prove that the note with the forgery of which defendant was charged was actually signed by C. L. Douglass and, therefore, not forged at all. The denial of the motion forms the basis for the third assignment and we shall deal with it later. We simply wish to call attention now to the fact that the motion for a continuance was before the court at the time that the ruling was made on the application for sub-

poenas, but just when the ruling was made on the motion for a continuance we cannot tell with certainty from the transcript, presumably, however, on the 24th day of October, the day the case was called for trial. We further find that defendant admits in his brief that he was not seeking or demanding that these two witnesses be subpoenaed on any insolvency affidavit, but simply demanding the issuance of a subpoena for them upon his affidavit that they were material, as a matter of right, without the payment of cost in advance, this right being claimed as a "constitutional privilege." In other words, if we correctly understand the contention of defendant as made in his brief as well as in his oral argument, it is that he had a constitutional right to wait until the day appointed for his trial and then demand of the court the issuance of subpoenas for as many witnesses as he wished by the clerk, returnable instanter, without any excuse or reason being given for the delay, without any information being furnished to the court of the purpose for which the witnesses were wanted or the facts to which they were expected to testify, without paying the clerk his costs therefor but refusing to do so, and without making an insolvency affidavit upon which to base his application for an order for the subpoenas, though both the clerk and the court had been apprised by other affidavits filed by defendant that he was insolvent, and to have the cause postponed until defendant could procure the attendance of the witnesses or else take their depositions. These are the facts disclosed by the transcript. In support of his contention defendant cities Sections 11 and 14 of the Declaration of Rights of the State Constitution of 1885, which sections are as follows:

"Section 11. In all criminal prosecutions the accused shall have the right to a speedy and public trial, by an

impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face, and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him."

"Section 14. No person shall be compelled to pay costs except after conviction, on a final trial."

Defendant also cites and relies on the sixth amendment to the Constitution of the United States, which is as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence."

Section 2875 of the Revised Statutes of 1892 is also relied on, which is as follows:

"2875. Accused to have compulsory process for witnesses.—If the accused shall desire witnesses to be summoned, either before the committing magistrate or before the court in which he is to be tried, the clerk or justice shall, upon application of himself or his counsel, issue subpoenas and necessary process to compel the attendance of the accused's witnesses."

The sixth amendment to the Federal Constitution, quoted in full above, has no applicability to the instant case for the reason that this amendment, as is also true of all of the first eight amendments, has reference only

to powers exercised by the government of the United States, and not to those of the State. Eilenbecker v. The District Court of Plymouth Colony, 134 U. S. 31, 10 S. Ct. 424. Also see Williams v. Hert, 110 Fed. Rep. 166, text 168; Mischer v. State, 41 Tex. Cr. 212, text 220 *et seq;* 9 Fed. Stats. Ann. 325, and numerous authorities there cited. This being true, the opinion of Chief Justice Marshall in U. S. v. Burr, Fed. Cas. No. 14,692d, Coombs Trial of Aaron Burr, cited and relied upon by defendant, is not in point.

At common law, in cases of felony, a defendant could not demand as a matter of right compulsory process for his witnesses. See 22 Ency. Pl. & Pr. 1330; U. S. v. Reid, 12 How. 361; 4 Black. Comm. x page 359 and 360.

This leaves for our consideration Sections 11 and 14 of the Declaration of Rights in our State Constitution and Section 2875 of the Revised Statutes, all of which have been set forth in full above.

Section 2875 of the Revised Statutes has reference more especially to preliminary proceedings in the courts of justices of the peace or committing magistrates, as a reference to the original act found on page 121 of the laws of 1828 will show, it being a territorial act and, of course, enacted prior to the adoption of any State Constitution. At the time of its incorporation into the Revised Statutes, Sections 2867 and 2868, which originally formed Sections 2 and 4 of Chapter 3702 of the Laws of 1887, were also incorporated therein, with some modifications. These sections provided for the issuing of subpoenas for defendant's witnesses, at the expense of the State, upon a proper insolvency affidavit, and were held to be constitutional in Buckman v. Alexander, 24 Fla. 46, 3 South. Rep. 817; Jenkins v. State, 31 Fla. 190, 12 South. Rep. 680. It may also be well to note that Sec-

tion 9 of Article XVI of the Constitution was amended by a joint resolution of the Legislature of 1893, which was adopted at the general election in 1894, so as to make the legal costs and expenses in criminal cases, when the defendant is insolvent or discharged, payable by the counties where the crime is committed, instead of by the State. See Laws of 1893, page 400. Sections 2867 and 2868 of the Revised Statutes of 1892 were modified by Section 3 of Chapter 4120 of the Laws of 1893, which reads as follows:

"Sec. 3. Defendants in criminal cases in all the courts of this State shall be entitled to have their witnesses summoned as now provided by law, but no compensation or mileage shall be paid to such witnesses by the State."

In Boyd v. State, 33 Fla. 316, 14 South. Rep. 836, the constitutionality of this section was assailed, but it was found unnecessary to pass thereon for reasons therein stated.

The law in force in regard to the summoning and payment of defendant's witnesses in a criminal case at the time of the trial in the instant case, was Chapter 5132 of the Laws of 1903, which reads as follows:

"Section 1. In all criminal cases prosecuted in the name of the State in the Circuit Courts of the State, where the defendant is insolvent or discharged, the county shall pay the legal expenses and costs as is now prescribed by law for the payment of costs incurred by the county in the prosecution of such cases; Provided, That there shall not be more than two (2) witnesses summoned and paid to prove the same fact, and provided further, That before any witness is subpoenaed on behalf of a defendant in the Circuit Court, or Criminal Court of Record, an application shall be made to the judge, in writing, on behalf of the defendant, setting

forth the substance of the facts sought to be proven by the witness or witnesses, making affidavit that the defendant is insolvent, and if, upon such showing, the Circuit Judge is satisfied that the witness or witnesses are necessary for the proper defense of the defendant, he shall order that subpoena issue, and that the costs as herein provided shall be paid to said witness or witnesses, and not otherwise; Provided, That the provisions of this act shall not apply to any courts in this State except to Circuit Courts and Criminal Courts of Record."

In the case of Buckman v. Alexander, 24 Fla. 46, which we have already cited, on page 50, referring to Sections 11 and 14 of the Declaration of Rights in our State Constitution, this court used the following language:

"Then, taking these clauses of the Constitution together, we think it clear that the accused, whether solvent or insolvent, is entitled to have process for his witnesses, and to have the same served, without payment of the fees of officers; that if insolvent or discharged, the State shall pay the costs of the prosecutions under regulations prescribed by law; and that if solvent he cannot be made to pay costs until conviction on final trial, having none to pay if discharged. Does the act in question, prescribing regulations, violate these provisions? Though the case before us does not fully present the question, the importance to the public of its early determination induces us to express our conclusions on it."

It should be observed, however, that in that case the question before this court was as to the *payment* of the witnesses of defendant by the State, he having been acquitted.

The case of Jenkins v. State, 31 Fla. 190, is more nearly

in point.   In that case, text 193, this court used the following language:

"While Section 11 of our constitutional Declaration of Rights emphatically declares that 'in all criminal prosecutions the accused shall have compulsory process for the attendance of witnesses in his favor,' still we do not understand that there is anything in this general provision of the fundamental law, that prohibits wholesome legislative regulation in the matter of procuring the attendance of witnesses by parties charged with crime, when, as in this case, it is proposed to throw upon the State the burden of the cost and expense to be incurred  therein. Neither do we understand that this constitutional provision was designed to give to parties charged with crime *carte blanche* right, at the cost of the State, to have any and all parties whom they may choose to represent to be *witnesses* in their favor, summoned *ad libitum*  without let or hindrance.   To put such a construction of the organic law into actual practice would soon suffice to deplete the public treasury."

It was further said therein on page 194:

"For the proper dispatch of the public business of our courts, we think that it is contemplated also that these applications by parties accused of crime shall be seasonably made. The party accused should not be permitted unnecessarily to delay the dispatch of public business  before the courts by delaying from day to day before presenting his application for the procurement of his witnesses, until his case is actually called for trial, but it should be promptly made at the earliest reasonable opportunity, in order that the witnesses may be  served and their attendance procured before the party's case is called for trial in its order."

In the case of Green v State, 17 Fla. 669, defendant's witnesses had been duly subpoenaed but had failed to appear and an attachment was asked to compel their attendance, therefore, it is not in point.

In the Constitutions of a number of other States we find similar provisions to those in the Constitution of this State in regard to the right of a defendant in a criminal prosecution against him to compulsory process for witnesses in his behalf. We have given these provisions a careful consideration, as well as the statutes based thereon, which vary more or less in the different States, and also the decisions of the different courts construing the constitutional provisions and statutes. Among other authorities examined by us we would refer to the following as being instructive: State v. Waters, 39 Me. 54; State v. Yetzer, 97 Iowa, 423, 66 N. W. 737; Woolfork v. State, 85 Ga. 69, 11 S. E. 582; Smith v. State, 118 Ga. 61; West v. State, 1 Wis. 209, text 231 et seq.; State ex rel. v. Grimes, 7 Wash. 445, text 449, 35 Pac. 361; State ex rel. Carraher v. Graves, 13 Wash. 485, 43 Pac. 376; Graham v. State, 50 Ark. 161, 6 S. W. 721; Atkins v. Com. 98 Ky. 539, 33 S. W. 948; Davis v. Com. (Ky.) 77 S. W. Rep. 1101; Ex Parte Marmaduke, 91 Mo. 228, 4 S. W. 91; State v. Berkley, 92 Mo. 41, 4 S. W. 24; Neyland v. State, 13 Tex. App. 536; Edmondson v. State, 43 Tex. 230; State v. Hornsby, 8 Rob. (La.) 554, S. C. 41 Amer. Dec. 305; State v. Adam, 40 La. Ann. 745; 5 South. Rep. 30; State v. Nathaniel, 52 La. Ann. 558, 26 South. Rep. 1008; State v. Nix, 111 La. 812, 35 South. Rep. 917; State v. Fairfax, 107 La. 624, 31 South. Rep. 1011; Martin v. State, 125 Ala. 64, 28 South. Rep. 92; People ex rel. Dean v. Commissioners of Grand County, 7 Colo. 190, 2 Pac. 912. These authorities are by no means in entire harmony. the reasoning and conclusions

therein being conflicting, but we cite them all for the discussion they contain of the question now under consideration, without adopting the reasoning used or the conclusions reached therein.

In line with the language used by this court in Jenkins v. State, 31 Fla. 190, text 193, already quoted by us, we are of the opinion that, while the two constitutional provisions relied upon are absolutely mandatory and binding, yet, where it has already been made to appear to the court that defendant is insolvent and one of the requested witnesses has already been ordered and subpoenaed upon defendant's insolvency affidavit and no showing is made to the court as to whether or not he has been served, or as to what defendant expects to prove by the other witness, and no excuse or reason given for the delay in making the application, no error was committed by the trial court in refusing defendant's application. In other words, where the State has made ample provision for having defendant's witnesses subpoenaed at the expense of the county, upon a proper compliance with the statutory requirements, where defendant is insolvent, he cannot as a matter of right demand that witnesses be subpoenaed, without compliance with those requirements. He cannot be permitted to assume the double role of prince and pauper, of Dr. Jekyll and Mr. Hyde in the same case. As was said in State, *ex rel.* Carraher, v. Graves, 13 Wash. 485, text 487, "it is clear that the defendant is only entitled to have necessary and material witnesses subpoenaed for him at the expense of the State or County, and he cannot be held to have the right to decide upon the materiality of the testimony that he expects from the witnesses desired. The decision of this question must rest with the court, and in such cases no

9 S. C.

subpoenas should be issued in behalf of a defendant to compel the attendance of witnesses without an order of the court having been obtained." Upon this question the entire case of State v. Nathaniel, 52 La. Ann. 558, 26 South. Rep. 1008, is most instructive. We quote the following language therefrom:

"The State of Louisiana has chosen to allow a defendant in a criminal case compulsory process for the obtention of six witnesses, without charge, and has imposed conditions with respect to the further enjoyment of that particular privilege. He may obtain such process for additional witnesses provided he is willing and able to bear the expense. But in any case he is bound to apply for the process in due time, and to the proper authority, and, if he has exhausted his privilege, should tender the amount necessary to defray the expense of bringing in the additional witnesses; and a failure in either of these particulars is a lack of due diligence."

We also refer to Rice's Evidence, Sec. 188; Abbott's Trial Brief, Criminal Causes, (2nd ed.) 195; 1 Bishop's New Crim. Proc., Sec. 959b.

It follows that the second assignment must fail.

The third assignment is that "the court erred in overruling the motion of the defendant for a continuance at the fall term of 1905."

This motion was based upon the following affidavit:

"Before me personally came J. T. Pittman, defendant in above stated case who being duly sworn says that he cannot safely go to trial at this term of the court on account of the absence of C. A. Douglass and W. D. Locke. That the said named persons are material witnesses. That both of said witnesses reside in the State of Florida, C. A. Douglass in Holmes County and W. D. Locke in Walton County and subpoena in this case has been issued for

said witnesses and the sheriff has been unable to serve them; and that the sheriff returns that he has been unable to find them and deponent avers that said Locke resides in the County of Walton in the State of Florida as aforesaid. That the witnesses are absent without the consent of this defendant, either directly or indirectly given; that he expects to procure the attendance of all of them by the next term of this court. That his application is made in good faith and justice may be done and not for the purpose of delay. That the witness C. A. Douglass above named who resides in the State of Florida is temporarily beyond the city of Pensacola, that such quarantine regulations now exist on account of yellow fever that no person is allowed to leave that point or travel through that to any other point in the State of Florida, unless they first undergo six days of detention in a camp prepared for that purpose. That he expects to prove by said witnesses that the note alleged to have been forged by the defendant was not forged by him said defendant but that same was actually signed by C. L. Douglass, that the defendant has no other witness by whom he can prove same facts.

J. T. PITMAN.

Sworn to and subscribed to
before me Oct. 17, 1905.

W. H. Brett, Jr.
Clerk Circuit Court."

In passing upon this assignment we are confronted with the settled principle in this court that:

In criminal as well as in civil cases an application for a continuance is addressed to the sound judicial discretion of the trial court, and the denial of such a motion will not be reversed by an appellate court, unless there has been a palpable abuse of this judicial discretion,

which must be clearly and affirmatively made to appear in the bill of exceptions, the rule being that motions for a continuance in criminal cases are to be even more closely scanned than in civil cases, because of the greater temptation to delay.

Clements v. State, decided here at this term, and numerous authorities therein cited.

In passing upon the first assignment we found that defendant had filed an affidavit on the 9th day of October, 1905, in which it was recited that he expected to be able to prove by C. A. Douglass, W. R. Stanley, W. D. Locke and J. M. Holliday that each of said witnesses was present when the note in question was executed and saw C. L. Dogulass execute the same. In the affidavit for continuance it is recited that defendant had no other witnesses than C. A. Douglass and W. D. Locke by whom he could prove the fact that C. L. Douglass signed the note. How can the contradictory statements contained in these two affidavits be reconciled? Moreover, later on in the proceedings we find that Miles C. Pittman testified on behalf of the defendant to the effect that he was the brother of defendant and that he, the witness, was present when the note alleged to be forged was executed and that he, the witness, signed the name of C. L. Douglass thereto with his own hand, at the request and by the authority of the said Douglass, that he, M. C. Pittman also signed the note as a subscribing witness and also that he signed the name of L. E. Moore thereto as a witness, at the request of said Moore. We also found that the motion and affidavit for continuance were filed on the 17th day of October, but that the transcript does not affirmatively show when the same was called to the attention of the court or when the ruling was made thereon. If defendant waited from the 17th to the 24th day of October before invoking

any ruling of the court on the motion, then he failed to show that diligence which should have been manifested. If, on the other hand, the ruling was had on the 17th, or prior to the 24th, when the case was called for trial, he should have shown further diligence and made additional efforts to secure the attendance of the missing witnesses or to have fully accounted for their absence, after every effort to procure their presence had been exhausted by him.   In several respects the affidavit is vague, ambiguous and uncertain, failing to come up to the necessary requirements.   See the authorities cited in Clements v. State, *supra*, and also Melbourne v. State, decided here at the present term.

The third assignment   must fall   with the first   and second.

The fourth and fifth are identical,   each being assignments that "The court erred in admitting in evidence the paper called the 'Trust Receipt,' offered on the part of the State."

All that defendant says in his brief in support of these assignments is that "two assignments upon this subject are made, because the court seems to have made two different rulings admitting the paper objected to.   There are two different series of objections to the paper.

First, irrelevancy and that the paper was prematurely offered, etc.

Second that alterations and additions had been made in and to the paper since it was   alleged to have   been signed by the defendant.   It will be noted that the paper was the first thing offered in evidence.   It was irrelevant in that it tended to show the uttering of the instrument about which defendant was indicted at another time and to another person than those charged in the indictment. The indictment charged the uttering of the paper to one

J. S. Utley November 26, 1904; but the instrument offered and admitted in evidence, tended to show another and distinct uttering, totally disconnected with Utley, and at a different time to-wit: In August, 1904.

This, I think was an error. The evidence should be excluded. I yield the point upon this assignment, that so far as alterations are concerned, that the explanation of them by the witness Utley probably obviated that objection."

We feel that we would be justified in treating these two assignments as practically abandoned because not argued. See Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and authorities there cited; Thomas v. State, 47 Fla. 99, 36 South. Rep. 161; Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Jackson v. State, 49 Fla. 3, 38 South. Rep. 599.

However, we turn to the bill of exceptions and find that the paper in question was a receipt given by the defendant to the Virginia-Carolina Chemical Company for certain notes and accounts, therein described, which were entrusted to defendant by said company for collection for the company, and, among the notes, specified therein, is one for $46.00 of C. L. Douglass. At the time the paper was first offered, the defendant objected thereto at that stage of the proceedings, upon the ground "that it was irrelevant to the issue; that the instrument forged should be first shown; that the paper was irrelevant until they had first exhibited the paper which the indictment charged to be forged." Thereupon the court asked the State Attorney if he expected to correct the paper, to which he replied that he did, whereupon the court overruled the objection. Later on defendant renewed his objection, and made the further additional objection "that the paper offered is not the paper signed by the defen-

dant, or in the condition that it was in when the defendant signed it; that these alterations and additions which have been made give it a different force and effect from the paper as signed by Pittman." This objection was also overruled. These are the only objections we find in the bill of exceptions which were made by defendant to the introduction of the "trust receipt" in evidence.

It is absolutely settled here that this court cannot consider any grounds of objections to the admissibility of evidence, except such as were made in the court below; the plaintiff in error being confined to the specific grounds of objection made by him in the trial court. Markey v. State, 47 Fla. 38, 37 South. Rep. 53; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656, and authorities therein cited; Schley v. State, 48 Fla. 53, 37 South. Rep. 518; Mugge v. Jackson, 50 Fla. 235, 39 South. Rep. 157; Caldwell v. State, 50 Fla. 4, 39 South. Rep. 188; Supreme Lodge Knights of Pythias v. Lipscomb, 50 Fla. 406, 39 South. Rep. 637.

The defendant having abandoned his additional objection to the introduction of the receipt, which objection we copied in full above, is confined here to his objections that the paper was prematurely offered, not being admissible at that stage of the proceedings, and that it was irrelevant. The court admitted the paper upon the promise of the State Attorney to properly connect it by other evidence with the alleged forged paper. The trial court is authorized to regulate the order of the introduction of evidence, and its discretion in this matter will only be interfered with by an appellate court where clearly abused. Robertson v. State, 40 Fla. 509, 24 South. Rep. 474; Brown v. State, 40 Fla. 459, 25 South. Rep. 453; McCoggle v. State, 41 Fla. 525, 26 South. Rep. 734. Also see 1 Thompson's Trials, Sec. 344. If evi-

dence apparently incompetent only because its relevancy is not apparent, or because it is not the best evidence, is offered, the court may, in the exercise of its discretion, receive it conditionally, if counsel gives assurance that he will supply the necessary foundation afterward. Abbott's Trial Brief, Criminal Causes, (2nd ed.) 310. If, however, such evidence is so conditionally received, and the necessary connecting evidence is not introduced, so as to show the relevancy of the admitted evidence, the court should exclude it on its own motion. Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182, S. C. 48 Amer. St. Rep. 267.

If in the opinion of defendant this paper was improperly admitted in evidence, whether for failure to connect it with the forged instrument, or for any other cause, he could have moved at any time after the admission to strike it out. Dickens v. State, 50 Fla. 17, 38 South. Rep. 909; Caldwell v. State, 50 Fla. 4, 39 South. Rep. 188. However, no such motion was made, and, in our opinion, other evidence was introduced connecting the receipt with the instrument alleged to have been forged. The remaining objection interposed by the defendant to the introduction of the receipt is that "it was irrelevant to the issue." In passing upon this ground of objection it is sufficient to say that it is also settled law in this court that general objections to evidence proposed, without stating the precise grounds of objections, are vague and nugatory, and are without weight before an appellate court, unless the evidence objected to is palpably prejudicial, improper, and inadmissible for any purpose or under any circumstances, when a general objection thereto is sufficient. Kirby v. State, 44 Fla. 81, 32 South. Rep. 836; Hoodless v. Jernigan, 46 Fla. 213, 35 South. Rep. 656; Thomas v. Williamson decided here at the

present term; Williams v. State, 45 Fla. 128, 34 South. Rep. 279. Evidence of circumstances tending to connect the accused with the commission of the alleged crime even though inconclusive, is properly admitted. Schley v. State, 48 Fla. 53, 37 South. Rep. 518.

These two errors are not well assigned.

The sixth assignment is abandoned.

The seventh assignment is that "the court erred in permitting the witness, J. S. Utley, for the State, to testify as to the handwriting of the defendant, J. T. Pittman."

The eighth assignment is that "the court erred in permitting J. S. Utley as witness for the State to testify as to his knowledge and belief to a letter said to have been written by the defendant."

These assignments may be considered together.

The only argument made by defendant in support of there assignments is that it was not claimed or shown that the witness was an expert on the subject of handwriting, and that he did not show that he was sufficiently acquainted with the handwriting of the defendant to testify as a non-expert witness. To this contention we cannot agree. The witness was not testifying as an expert in handwriting but to the fact that he had seen defendant sign his name on different occasions and that he thought he was familiar with defendant's signature. This qualified the witness to testify as to the signature of defendant and to give his opinion concerning the same. Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938; Woolridge v. State, 49 Fla. 137, 38 South. Rep. 3, and authorities cited therein. No error is made to appear here.

The ninth assignment is that "the court erred in overruling objections of the defendant to the admission of letters supposed to have been written by J. T. Pittman and C. E. Pittman, as to each and every of said letters."

All that defendant says in his brief concerning this assignment is that "the same argument made upon the seventh and eighth assignments is applicable here."

This being true, it would seem that this assignment should fall with the seventh and eighth assignments, since we found that they could not be sustained. Suffice it to say that a careful examination of the bill of exceptions upon this assignment does not disclose any error upon the part of the trial court in admitting the letters in question, especially as against the objections urged by defendant, so we content ourselves with what we have said in disposing of the last two preceding assignments.

The tenth assignment is that "the court erred in admitting in evidence a contract between one C. E. Pittman and the Virginia-Carolina Chemical Company.

The evidence shows that the business conducted by defendant was in the name of C. E. Pittman, his wife, but that defendant was the manager thereof and signed C. E. Pittman's name to correspondence and business papers. We have already found that the witness, J. S. Utley, had sufficiently qualified himself as to his familiarity and acquaintance with the signature of defendant to testify concerning the same, and we find that the witness further testified that he was familiar with the handwriting of the defendant in general, and that the signature of C. E. Pittman to the contract in question was in the handwriting of defendant. This assignment must go to keep company with the foregoing nine.

The eleventh to the twentieth assignments inclusive are based upon the admission in evidence of other instruments in writing, which were claimed to be forged and of proof that defendant had the same in his possession. No detailed discussion of these assignments, in our opinion. is necessary. We refer to the case of Langford v. State,

33 Fla. 233, the first and second head notes of which are
as follows:

"1.   On the trial of an accused for uttering an instru-
ment having on it forged endorsements, knowing at the
time that they were forged, and with an intent to defraud
and injure, the utterance by the defendant near the same
time, but previously, of other notes with forged endorse-
ments, and his possession and attempting to negotiate
subsequently, but near the same time, another note with
forged endorsements on it, and a guaranty to one of the
makers thereof with forged signatures, are admissible as
evidence that defendant knew, when he uttered the instru-
ment described in the information, that the endorsements
were forged, and of a criminal intent in uttering the
same.

2.   Evidence that the accused had, at the time of utter-
ing the forged instrument described in the information,
knowledge that other forged instruments testified to
have been uttered by him or to have been in his posses-
sion and used by him were forgeries, is not necessary to
entitle the consideration of the latter by the jury." Also
see Smith v. State, 29 Fla. 408, text 421, 10 South. Rep.
894; Roberson v. State, 40 Fla. 509, 24 South. Rep. 474;
Wallace v. State, 41 Fla. 547, 26 South. Rep. 713; Kirby
v. State, 44 Fla. 81, 32 South. Rep. 836; Baldwin v.
State, 46 Fla. 115, 35 South. Rep. 220; Woolridge v.
State, 49 Fla. 137, 38 South. Rep. 3; 19 Cyc. 1419.

The fact that defendant was under indictment for the
forgery of some of the instruments so admitted in evi-
dence could not affect their admissibility in evidence.
We find that the State made no attempt to show that in-
dictments were pending against defendant for the forgery
of any of these instruments so admitted in evidence, this
information being furnished by defendant's counsel, and

was admitted by the State Attorney  because defendant offered to make proof of the fact.

The twenty-first assignment is abandoned.

The twenty-second assignment is that "the court erred in requiring J. T. Pittman to answer questions of  the State Attorney about sending to Virginia-Carolina Chemical Co. notes embraced in the trust receipt."

It is settled in this court that for the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected with the cause or  the parties thereto, upon which  matters he may be contradicted by other evidence, and this rule  applies to  the cross-examination of a defendant when he  voluntarily offers himself as a witness, to the same extent and with like limitations as to other witnesses.  Wallace v. State, 41 Fla. 547, text 575, 26 South. Rep. 713, 722; Bryan  v. State, 41 Fla. 643, 26 South. Rep. 1022; Squires v. State, 42 Fla. 251, 27 South. Rep. 864; Stewart v. State, 42 Fla. 591, 28 South. Rep. 815; Fields v. State, 46 Fla. 84,  35 South. Rep. 185. As was said in Eldridge v. State, 27 Fla. 162, "The motives, interest, or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and.as to such matters he may be contradicted." Also see Alford v. State, 47 Fla. 1, 36 South. Rep. 436.

As was said in Eatman v. State, 48 Fla. 21, text 33, 37 South. Rep. 576, 577, "The court permitted the  State to interrogate the defendant as to matters tending to show the fraudulent conversion of collections of money made by the defendant in the course of his employment by the Doty & Stowe Company other than and  prior to  that alleged to have been embezzled in this case.  This testimony was admissible but only for the purpose of proving

or illustrating the intent of the defendant in committing the alleged act of embezzlement for which he was being tried." Also see Thalheim v. State, 38 Fla. 169, 20 South. Rep. 938, and Wallace v. State, 41 Fla. 547, 26 South. Rep. 713, and authorities cited therein; Baldwin v. State, 46 Fla. 115, 35 South. Rep. 220 Also see Goode v. State, 50 Fla. 45, 39 South. Rep. 461, and authorities therein cited for a general discussion of admitting testimony of other crimes than that with which a defendant stands charged, or of testimony tending to prove other and similar crimes.

In the light of these authorities, we are of the opinion that no error was committed in overruling the objections of defendant to the questions propounded to him by the State on his cross-examination and requiring him to answer the same.

The twenty-third, twenty-fourth, twenty-fifth and twenty-sixth assignments are submitted upon the same argument, the first three relating to the overruling of objections to questions propounded by the State to defendant on his cross-examination and the twenty-sixth assignment being based upon the refusal of the court to strike out the "testimony of all notes about which defendant had testified."

We have carefully considered all of these assignments as well as the argument in support thereof and are of the opinion that what we have just said in treating of the twenty-second assignment applies with equal force to these assignments. Defendant in his brief contends in support of the twenty-third assignmet that the testimony sought to be elicited from the defendant "was wholly immaterial and irrelevant," and says that the other assignments "are submitted upon the same argument," referring also to the argument made in support of the eleventh

assignment. It is unnecessary for us to repeat what we said about general objections to evidence in disposing of the fourth and fifth assignments. The authorities there cited are equally applicable here. We also refer to the authorities cited in treating of the eleventh assignment. We find that the court did strike out all the testimony concerning a number of notes, which are specified in the bill of exceptions, about which defendant had testified. Defendant has not pointed out to us why the testimony concerning the other notes should have been stricken out or informed us wherein the refusal of the court so to do was prejudicial to him.

The twenty-seventh assignment is abandoned.

The twenty-eighth to the thirty-second assignments inclusive are based upon the refusal of the court to give certain specified charges requested by defendant. We see no useful purpose to be accomplished in setting forth these charges. Suffice it to say that we have given all of them a careful examination, with the exception of the one referred to in the thirtieth assignment, as to which defendant admits that the record does not clearly show what the charge was, in which admission we fully concur, and the one refererd to in the thirty-second assignment, and we are of the opinion that no error has been made to appear to us in the refusal of any of these charges. Such propositions of law as were correctly stated therein seem to have been fully covered by the charges already given by the court. We fail to find any exception noted to the refusal to give special charge No. 5 which forms the basis for the thirty-second assignment, therefore, we cannot consider it. See English v. State, 31 Fla. 340, 12 South. Rep. 689; Shepherd v. State, 36 Fla. 374; Parnell v. State, 47 Fla. 90, 36 South. Rep. 165.

This brings us to the last assignment, which is the

thirty-third and is based upon the overruling of the defendant's motion for a new trial.

We have already considered all the grounds of this motion in passing upon the other assignments, except those which question the sufficiency of the evidence to support the verdict and charge that the verdict was contrary to law. We see no occasion to set forth the evidence. We have given it a most careful examination and, while there is much conflict therein, we are of the opinion that there was sufficient evidence to support the verdict. See 19 Cyc. 1411 to 1426 inclusive, treating of evidence in prosecutions for forging and uttering. Carver v. People, 39 Mich. 786; 19 Cyc. 1389; Rex. v. Shukard, Russell and Ryan, Crown cases, 200, which last three authorities were cited to us by defendant. We fail to find wherein the verdict is contrary either to the law or the evidence, and, therefore, we must refuse to disturb it. See McNish v. State, 47 Fla. 69, 36 South. Rep. 176. The language of Chief Justice Anderson in Carter v. Bennett, 4 Fla. 283, text 356, quoted by us in Walker v. Lee, decided here at the present term, is especially applicable.

The judgment must be affirmed, and it is so ordered, at the cost of Holmes County, the insolvency of the defendant having been satisfactorily shown.

COCKRELL and WHITFIELD, JJ., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.